[No. F006896. Fifth Dist. May 15, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES K. SAMPSON, Defendant and Appellant.

COUNSEL

Jeffry Glenn, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Ruth M. Saavadra, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

MARTIN, J.—

### STATEMENT OF FACTS AND CASE

At about 2 a.m. on October 25, 1984, appellant stabbed two men in the Salida Club, then fled the state. One victim received a slash wound in the chin and throat area which required sutures; the other, stabbed in the back, sustained spinal cord damage requiring several months of hospitalization and suffers from various continuing symptoms.

On December 5, 1984, appellant was convicted in Arkansas of first degree battery and first degree escape, and sentenced to two concurrent ten-year terms.

On July 3, 1985, appellant apparently sent to the Stanislaus County District Attorney and the superior court written notice of his place of imprisonment and a request for final disposition of pending charges stemming from the Salida Club incident pursuant to Penal Code section 1389,[1] article 3. Article 3 requires that once such notice is received by the prosecuting

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

authority, a defendant shall either be brought to trial within 180 days (less any necessary or reasonable continuance), or charges will be dismissed with prejudice. The district attorney had no record of the date the notice was received, but it clearly arrived sometime before September 16, 1985, when it was acknowledged by signature.

On October 15, having waived his right to a public defender, appellant appeared pro se before Judge Girolami of the municipal court. The "Notice, Sentence, Probation, Commitment, Warrant Form" (hereinafter notice form) contains the notation, "time waived as to prelim/Def req a cont for 30 days. Def fd competent to handle own case." A box labeled "time waived" was checked. Appellant maintains that he never meant to waive time as to his right to be tried within 180 days of notice under section 1389. The preliminary hearing was set for November 19.

On November 19, appellant appeared before Judge Cole of the municipal court. The notation on the notice form this time read: "Defendant mo to continue—not ready to procede. Defendant also requests appointed counsel. Public Defender apptd—Mr. Chase present—Defense mo to continue—no obj by Peo—Raymond Lewis ordered to return. Def w/t 14 days on 1381 [*sic*] remand." Appellant confirms that at this time he did waive 14 days for purposes of section 1389.

On December 3, 1985, following a preliminary hearing at which he was represented by Bruce Perry of the public defender's office, appellant was held to answer on two violations of section 245, subdivision (a)(1), and two allegations of great bodily injury. An amended information also charged a prior violent felony conviction within the meaning of section 667.5, subdivisions (a) and (c).

On December 9, the date set for superior court arraignment, appellant appeared once again without counsel. He requested that the public defender be appointed. Dallas Cole, Public Defender for Stanislaus County, accepted the appointment and indicated his preparedness. Appellant entered pleas of not guilty and denied the prior. Appellant's attorney, Cole, then suggested January 27, 1986, as a trial date, and the judge set trial for that date. No mention was made of the 180-day limitation of section 1389.

On January 14, 1986, appellant appeared with Deputy Public Defender Bruce Perry before superior court Judge Cantwell on a motion to consolidate this case with another pending proceeding. The motion was denied. Appellant did not raise the section 1389 180-day limit at this hearing, although he and his attorney were familiar with the issue, it having been discussed at the preliminary hearing.

At the pretrial conference on January 23, Attorney Perry for the first time moved to dismiss the instant charges pursuant to section 1389, article 3, as 180 days had passed. Judge Cantwell denied the motion, but Perry informed the court that he intended to raise the issue again prior to commencement of trial.

On January 27, the day set for trial, Perry again moved to dismiss, this time before Judge Stone, who denied the motion. Judge Stone based his decision on his conclusion that "there was a waiver by the defendant on the 9th day of December when he appeared at that time and consented to have the jury trial set beyond the calculated 180 days."

Perry then informed the court that appellant wanted to handle his own case. Judge Stone examined appellant thoroughly, and reluctantly granted the request, discharging the public defender's office.

Voir dire took place that afternoon, and was quickly concluded. Thereafter, the prosecutor made his opening statement, and the defendant made his.

On the following morning, January 28, prior to the People's first witness, appellant informed Judge Stone that he required assistance of counsel. The ensuing discussion occupies eight pages of transcript. In brief, Judge Stone denied appellant's request for counsel and motion to disqualify; appellant refused to participate or be present in court and returned to his holding cell; and trial proceeded with appellant neither present nor represented by counsel. Judge Stone advised appellant he could return to the courtroom and actively participate in the trial at any time. Appellant declined.

That afternoon, following presentation of the prosecution's case and argument, the jury returned two verdicts of guilty, and found the section 12022.7 allegations to be true. After a bifurcated hearing on appellant's prior, which appellant again refused to attend, the jury found the prior section 245, subdivision (a) conviction to be true.

Sentencing occurred on February 24, 1986. Appellant was present, although uncooperative. Judge Stone found appellant statutorily ineligible for probation (§ 1203, subd. (e)(2)). The court declared the Arkansas prison term to be the base term and sentences in the instant case to be subordinate terms. On count one he sentenced appellant to the middle term of three years with two 3-year enhancements (§§ 12022.7, 667.5, subd. (a)), to be served consecutive to appellant's Arkansas prison term. On count two, appellant received the three-year middle term plus a three-year enhancement (§ 12022.7), to run consecutive to the sentence in count one and the Arkansas

prison term. The court then suspended two-thirds of all prison terms imposed and enhancements excepting the section 667.5 enhancement as to count one, resulting in a net prison term of seven years to be served consecutive to the State of Arkansas base term. He also imposed a $500 restitution fine (Gov. Code, § 13967).

Appellant filed a timely notice of appeal.

DISCUSSION

I.

DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO DISMISS PURSUANT TO SECTION 1389?

As stated, *ante,* the trial court denied appellant's motion to dismiss. Specifically, the court found that when appellant's counsel asked for and received a trial date beyond the 180-day speedy trial period of section 1389, he waived any right to dismissal for the prosecution's failure to bring him to trial in 180 days.

In pertinent part, section 1389, article 3 provides: "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who

shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested."

In concluding that appellant had waived time, the court accepted the prosecutor's analogy to *People* v. *Robinson* (1968) 266 Cal.App.2d 261 [72 Cal.Rptr. 33], a case involving sections 1381 and 1382. These sections deal with prisoners detained within California but in a different county. Section 1382, subdivision 2 provides for a waiver "if [the case] is set for trial on a date beyond the 60-day period at the request of the defendant or with his consent, express or implied, or because of his neglect . . . ."

█ Appellant attempts to distinguish *Robinson* by asserting that, in that case, the defendant was represented by counsel. Here, he argues, appellant was effectively unrepresented, as the public defender who requested the trial date "was only appointed at that hearing, and presumably was not aware of the issue. As far as that issue, at that hearing, was concerned, appellant was effectively 'on his own', i.e. without counsel."

Appellant cites no authority for his proposition that he was without counsel on December 9. Public Defender Dennis Cole had been appointed and was present. He had presumably conferred with appellant prior to the proceeding, as he knew how appellant would plead. Nothing in the record indicates that appellant had not given him full authority to represent his interests before the court. "Where counsel has been appointed and is present in court 'neither the party himself [citations] nor another attorney [citations], can be recognized.' (*People* v. *Merkouris* [(1956)] 46 Cal.2d [540,] 554-555 [297 P.2d 999].)" (*Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 781 [126 Cal.Rptr. 251, 543 P.2d 619].) Thus, Cole had authority to suggest and acquiesce in a trial date.

Appellant next contends: "[B]y section 1382 an action shall not be dismissed under section 1381 'if it is set for trial beyond the 60 day period at the request of the defendant *or with his consent, express or implied . . . .*' No such words appear in section 1389. A waiver can therefore be implied by the defendant's silent consent to having the date set beyond the expiry of the period in section 1381 cases *but not in section 1389 cases.*

"Thus it was not appellant who should have objected to the trial being set beyond the expiry of the 180 day period but the prosecution."

Section 1389 contains no statutory provision for waiver. █ The section, however, represents California's enactment of an interstate compact, the interstate agreement on detainers (IAD). The IAD, as an interstate

compact approved by Congress, is a *federal law subject to the federal rather than state construction. (Cuyler* v. *Adams* (1981) 449 U.S. 433, 438-442 [66 L.Ed.2d 641, 647, 650, 101 S.Ct. 703].)

■ Federal cases interpreting the IAD have concluded that waiver is indeed possible. "A prisoner may waive his IAD rights . . . if he affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD." (*Brown* v. *Wolff* (9th Cir. 1983) 706 F.2d 902, 907; see also *United States* v. *Black* (9th Cir. 1979) 609 F.2d 1330, 1334.)

While we have found no California or federal case which presented this precise fact situation, courts of other IAD party states have found a waiver on similar facts.

"The issue simply stated is whether a request for a trial setting *by defendant's counsel* for a trial date beyond the 180-day limit of the statute entitles the defendant to discharge. No Missouri case law reaches the issue, but common sense dictates the result in the instant case. The State announced ready, and presumably, the trial could have been conducted within the 180 days. It was the defendant who requested the late September setting granted by the trial court. The defendant was present and voiced no objection until after he believed the 180 days had passed. To hold that a defendant can demand a trial within 180 days, then on the basis of time to prepare for trial request and receive a setting beyond 180 days and still claim a right to discharge borders on the ludicrous.

"In three other jurisdictions under very similar facts, the courts have refused similar claims. A Colorado case, *Chambers* v. *District Court In & For Cty. of Arapahoe,* 180 Colo. 241, 504 P.2d 340 (banc 1972), presents remarkably comparable facts. Trial was set beyond the 90-day limit of the Colorado statute without objection—in fact, with express acquiescence of defense counsel. Defense counsel also sought and obtained a continuance of pretrial conference. The Colorado Supreme Court found a waiver holding that the actions of defense counsel with the defendant present waived the statute. The Supreme Court of North Dakota in *State* v. *Carlson,* 258 N.W.2d 253 (N.D. 1977), denied a claim where the trial setting was delayed beyond the 90-day period of the North Dakota statute because of conflicts with defense counsel's schedule interfering with earlier settings. The language of the court is particularly appropriate here:

"The record is completely devoid of any action taken by the defendant which would indicate his dissatisfaction with the trial date or the agreement with counsel, except for the writ of habeas corpus filed by the defendant without the aid of his court-appointed counsel. The defendant may not have

things both ways. He may not have the benefit of a delay and then turn about and charge the State with such delay." (*Id.* at 258.)

"Utah, in *State* v. *Bonny,* 25 Utah 2d 117, 477 P.2d 147 (1970) reached a similar result when defense counsel requested a setting outside the statutory limit." (*Russell* v. *State* (Mo.App. 1981) 624 S.W.2d 176, 179.)

Also on point is *Scrivener* v. *State* (Ind. 1982) 441 N.E.2d 954, 956: "In the case at bar, the 180 day period expired on April 1, 1981, without considering the delays including three changes of plea and continuances occasioned by appellant. On February 24, 1981, thirty-five (35) days before the 180 day period expired, the trial court set the cause for trial on April 30, 1981, twenty-nine (29) days beyond the 180 day period. Thus, appellant's failure to object to the trial date when it was set, on or before April 1, 1981, precludes him from having the information dismissed under . . . Article 3 . . . ."

Although finding no waiver, the court in *People* v. *Sevigny* (Colo. 1984) 679 P.2d 1070, 1075, set out the rule in Colorado: "While a waiver of statutory speedy trial rights need not comport with the standards applicable to a waiver of basic constitutional rights—that is, an intentional relinquishment or abandonment of a right or privilege adequately understood by the defendant, *e.g., Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)—a waiver of statutory rights must still be voluntary. [Citation.] Voluntariness in this context requires a showing of record that the defendant or his attorney freely acquiesced in a trial date beyond the speedy trial period. *E.g., People v. Gallegos,* 192 Colo. 450, 560 P.2d 93 (1977); *Harrington* v. *District Court,* 192 Colo. 351, 559 P.2d 225 (1977)."

In the instant case, appellant was present in court with counsel at the December 9, 1985, arraignment and trial setting; it was appellant's attorney who requested the January 27, 1986, trial date without comment or objection by appellant who, as the record reflects, was then well aware of the provisions of section 1389. No federal or state court has held that facts such as these fall short of constituting a waiver, nor will we. The motion for dismissal was properly denied.

II.

WAS THE TRIAL COURT'S ABUSE OF DISCRETION IN DENYING SUBSTITUTE COUNSEL AT TRIAL PREJUDICIAL?

Appellant next contends that the trial court erred in denying his request at trial for substitute counsel.

As described *ante,* the trial court conducted no specific inquiry when appellant announced during trial that he required appointed counsel and was unable to proceed pro se. However, the record reflects appellant volunteered his reasons in the ensuing dialogue with the court. Nevertheless, respondent concedes that the failure to conduct an inquiry amounted to an abuse of discretion. (See *People* v. *Elliott* (1977) 70 Cal.App.3d 984 [139 Cal.Rptr. 205].) Respondent contends, however, that the error was harmless: "The overwhelming evidence of appellant's guilt shows that it is not reasonably probable that a different result would have occurred absent error." Assuming error, respondent concludes that the *Watson* standard (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) applies and we agree. (*People* v. *Elliott, supra,* 70 Cal.App.3d at p. 998; *People* v. *Hill* (1983) 148 Cal.App.3d 744, 762 [196 Cal.Rptr. 382].)

Accepting respondent's concession, the question presented here is whether this court can rely on the state of the evidence, as presented at the trial, in finding harmless error. Appellant urges that the answer is no: "[T]he trial was reduced to a one sided sham in which the result was inevitable. There was effectively no trial of the issues at all."

The record reflects appellant voluntarily absented himself, ignoring the court's encouragement that he remain and participate in the trial. Had appellant remained, he could have at least attempted to cross-examine witnesses and present evidence. He had assured the court the preceding day "I never wanted a lawyer," and articulated in detail his prior experience in representing himself (substantial), rejected the court's detailed review of the hazards of self-representation by a lay person, and insisted that he be allowed to proceed pro se. And he had done so, selecting a jury and making an opening statement. We see no reason why appellant should be entitled to reversal for manufacturing a "one sided sham," when the defendants in cases like *Elliott,* who go on to attempt self-representation after substitute counsel is denied, remain subject to affirmance on a *Watson* standard. Not applying *Watson* to these facts would in effect be rewarding appellant for his refusal to participate, while penalizing defendants like Elliott for cooperating with the court.

Further, as respondent points out, the evidence below overwhelmingly demonstrated appellant's guilt. Five witnesses positively identified appellant as the attacker. No one else in the bar had any visible weapon. The attacks on both victims were unprovoked.

Here, appellant's absence was by his own choice, and the court made it clear that he was welcome to return any time to conduct his defense. He

voluntarily and knowingly declined to do so and, upon this record, may not now complain. If there was error, it was harmless.

The judgment is affirmed.

Woolpert, Acting P. J., and Pettitt, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied August 20, 1987.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.