[No. F012059. Fifth Dist. Mar. 27, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT EDWIN NITZ, Defendant and Appellant.

## COUNSEL

Larry L. Dixon, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THAXTER, J.**—Appellant pleaded guilty to one count of grand theft (auto) (Pen. Code, § 487, subd. 3).[1] At his request, appellant was immediately sentenced to a four-year prison term to run concurrent with a term appellant was serving in Michigan. Before the guilty plea was entered, the court denied appellant's motion to dismiss all charges because of alleged failure to comply with the requirements of the Interstate Agreement on Detainers (IAD) incorporated in section 1389. The sole contention on appeal is that the court erred in denying the motion to dismiss. We will affirm.

### FACTS

Because of the limited issue presented on appeal, we state only those facts bearing on application of the IAD in appellant's case.

On June 24, 1987, a complaint was filed in Tuolumne County charging appellant with grand theft (auto) (§ 487, subd. 3), auto theft (Veh. Code, § 10851), and burglary (§ 459). A warrant for appellant's arrest on these charges was issued on June 29, 1987.

On March 9, 1988, appellant was a prisoner in the Southern Michigan State Prison. On that date appellant presented a letter to the Michigan prison authorities requesting a final disposition of the California charges under the IAD.

On April 3, 1988, appellant wrote to the Tuolumne County District Attorney requesting disposition of the pending charges. This letter was received on April 11. The district attorney responded and advised appellant his letter did not in itself initiate proceedings under the IAD. The district attorney also wrote to the Michigan warden informing the warden of appellant's request. The district attorney included a packet of forms which he asked the warden to complete and return as soon as possible. The district attorney further informed the warden that under California law, appellant's

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

March 9, 1988, letter "would appear to be adequate notice to initiate the process anticipated by the Interstate Agreement on Detainers."

On May 13, 1988, the district attorney received a letter from the Michigan Department of Corrections stating that before the IAD forms would be processed, the district attorney needed to lodge a "formal detainer," i.e., a "certified/sealed copy of [the arrest] warrant," with the Michigan Department of Corrections. The Michigan authorities acknowledged receipt of the detainer on June 3, 1988.

On June 13, 1988, the district attorney received notice from the Michigan Department of Corrections that appellant wanted to be returned to California for trial. This letter was accompanied by the necessary IAD forms.

Appellant was booked into the Tuolumne County jail on August 20, 1988. The preliminary hearing was held on September 6, 1988, and the information was filed on September 20.

Appellant was arraigned in superior court on October 11, 1988. At that time his petition to proceed in pro. per. was granted. During the arraignment proceedings, the district attorney informed the court appellant had made a demand under the IAD on June 14, 1988, and consequently had to be brought to trial within 180 days of that date. The court calculated the last date for trial as December 10. Appellant advised the court he would like to waive time to prepare his defense "if it doesn't interfere with the interstate agreement as far as causing problems for the People." Appellant then waived time for trial until January 24, 1989. He subsequently entered additional time waivers incident to further requests for continuances.

On January 17, 1989, appellant filed a motion to dismiss based on an alleged violation of the IAD requirement that he be brought to trial within 180 days of his request for a final disposition. The denial of that motion is the basis for this appeal.

## DISCUSSION

■ Section 1389 codifies the Interstate Agreement on Detainers, an agreement between California, the federal government, 47 other states, and the District of Columbia to assist in resolving charges and detainers based on untried indictments, informations or complaints lodged against persons imprisoned in other jurisdictions. (*People* v. *Brooks* (1987) 189 Cal.App.3d 866, 871-872 [234 Cal.Rptr. 573].) "The IAD establishes a procedure by which a prisoner against whom a detainer has been lodged may demand trial within 180 days of a written request for final disposition properly

delivered to the prosecutor and appropriate court of the prosecutor's jurisdiction. [Citation.] The failure of the state receiving the request to act in compliance with the IAD and the 180-day limit results in dismissal of the pending criminal charges with prejudice. [Citations.]" (*Ibid.*)

The 180-day requirement is found in article III of the IAD which provides, in part: "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint. . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

"(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court . . . ." (§ 1389, art. III.)

 Appellant argues the 180-day period commenced on March 9, 1988, with his letter to the Michigan prison authorities requesting disposition of the Tuolumne County charges, pursuant to article III, subdivision (a), of the IAD. Alternatively, appellant contends the period commenced within a reasonable time after that letter, relying on article III, subdivision (b) and *People* v. *Wilson* (1977) 69 Cal.App.3d 631 [138 Cal.Rptr. 259].

Respondent takes the position that, regardless of when the 180-day period commenced, the trial court properly denied appellant's motion to dismiss because appellant waived his IAD rights on October 11, 1988, and thereafter by requesting trial continuances. Appellant concedes he waived his IAD rights beginning on that date. However, appellant asserts the 180-day period expired before October 11, 1988, and thus, the court lost jurisdiction. Consequently, the trial court should have dismissed the charges.

In *People* v. *Sampson* (1987) 191 Cal.App.3d 1409 [237 Cal. Rptr. 100], this court held a defendant may waive his IAD rights if he requests to be treated in a manner contrary to the IAD procedures. (*Id.* at p. 1416.) In *Sampson,* the waiver occurred before the 180-day period expired. Here, there is a dispute as to when the 180-day period commenced. Although appellant requested disposition of the pending charges on March 9, 1988, the district attorney did not receive the necessary IAD forms until June 13, 1988. If appellant's contention is correct, the 180-day period expired before the time waiver on October 11, 1988. However, it is unnecessary to decide this issue. We hold that, even if the 180-day period had expired before October 11, 1988, appellant's waiver of his IAD rights was effective.

While we have found no California or federal case directly on point, federal courts have held in the context of the entry of a guilty plea that IAD violations do not cause a court to lose jurisdiction where the defendant does not timely raise the issue. ■ Since the IAD is an interstate compact approved by Congress, it is a federal law subject to federal rather than state construction. (*People* v. *Sampson, supra*, 191 Cal.App.3d 1409, 1415-1416.)

In *United States* v. *Palmer* (3d Cir. 1978) 574 F.2d 164, the defendant was transferred from state to federal custody and then back to state custody in violation of article IV, subdivision (e) of the IAD. The defendant did not move to dismiss the indictment on this ground until after he had pleaded guilty. The court noted that if the defendant had raised this contention prior to pleading guilty, the indictment would have been dismissed with prejudice. (*Id.* at p. 166.) However, by pleading guilty the defendant waived his right to have the IAD claim considered. In response to the defendant's contention that the IAD violation stripped the court of subject matter jurisdiction, the court stated the IAD constitutes nothing more than a set of procedural rules. (*Id.* at p. 167.) Since the determination of whether a claim is "jurisdictional" depends on the source and importance of the right asserted as well as its impact, the court held the violation of a statutory provision such as article IV, subdivision (e) of the IAD is not sufficiently important to deny a court jurisdiction to entertain a guilty plea where the defendant does not timely raise the issue. (*Ibid.*)

The same result was reached in *Camp* v. *United States* (8th Cir. 1978) 587 F.2d 397, where the defendant entered a guilty plea after an IAD violation occurred. The *Camp* court also held an IAD violation does not deprive a court of "jurisdiction." Further, since the IAD amounts to nothing more than a statutory set of procedural rules which clearly do not rise to the level of constitutionally guaranteed rights, a defendant may waive his IAD rights without being aware of them. (*Id.* at p. 400.)

The results reached in the above-cited federal authorities are based on the principle that a valid guilty plea operates as a waiver of all nonjurisdictional defects or errors. (*Camp* v. *United States, supra*, 587 F.2d 397, 399.) ■ Here, although appellant did not plead guilty before claiming the IAD had been violated, he expressly waived the 180-day requirement before making his motion to dismiss based on the IAD.

Whether the waiver is express or by a guilty plea, the result should be the same. ■ The IAD amounts to nothing more than a set of procedural rules, and the rights it protects in no way affect the fairness and accuracy of the fact-finding procedure or other due process or trial rights. (*Gray* v. *Benson* (D.Kan. 1978) 458 F.Supp. 1209, 1213.) Congress's provision of a stringent remedy for violation of the 180-day rule does not alter the procedural nature or nonfundamental basis of the rule itself. (*Ibid.*) ■ Thus, appellant's waiver of the 180-day requirement was valid regardless of when the 180-day period expired. Moreover, it was not necessary that appellant be aware of the right he was waiving. (*Camp* v. *United States, supra*, 587 F.2d 397, 400.)

We conclude that the trial court properly denied appellant's motion to dismiss. The judgment is affirmed.

Stone (W. A.), Acting P. J., and Baxter, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 10, 1990.