STATE of Utah, Plaintiff and Appellee,

v.

Larry SMITH and Barrett Wynn,
Defendants and Appellants.

No. 910050–CA.

Court of Appeals of Utah.

May 22, 1992.

John L. Miles, St. George, for defendants and appellants.

Jim R. Scarth, Kanab, for plaintiff and appellee.

Before BENCH, GREENWOOD and ORME, JJ.

## MEMORANDUM DECISION

ORME, Judge:

Appellants Barrett Wynn and Larry Smith appeal from the final judgment and sentence of the Sixth Circuit Court of Kane County, convicting both defendants of unlawful taking or possession of protected wildlife and waste of protected wildlife, and convicting Smith of carrying a loaded firearm in a vehicle.

Appellants primarily argue Officer Helms's stop and search of the vehicle were unlawful and, therefore, that their motion to suppress the evidence obtained from the search should have been granted. Appellants also argue that the forfeiture of the vehicle belonging to Wynn's wife,

Pamela Wynn, was improper.[1] We affirm, except as to the forfeiture.

## WAIVER BY WYNN

Wynn's original plea of no contest apparently was conditioned upon his being allowed to reserve the right to challenge the vehicle's search. *See State v. Sery*, 758 P.2d 935, 938 (Utah App.1988). However, his written statement of November 14, 1990 clearly shows that he withdrew all the conditional language of his original plea and explicitly stated that he wished to change his plea to no contest without condition. A voluntary plea of guilty or no contest constitutes a waiver of the right to appeal all nonjurisdictional issues, including denial of a motion to suppress. *Id.* As a result, Wynn waived his right to appeal the trial court's ruling on the motion to suppress.

## STOP AND SEARCH OF THE VEHICLE

As regards Smith's challenge to the motion to suppress, we first conclude that Officer Helms had a reasonable and articulable suspicion sufficient to stop the truck. *See Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (plurality opinion). In developing a reasonable articulable suspicion, law enforcement officers are entitled to reach "common-sense conclusions about human behavior." *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).

In this case, Officer Helms was aware at the time he stopped the vehicle that a call had been made on December 9, 1988, by Samuel Carpenter, to the Division of Wildlife Resources' "poaching hotline." Wildlife officer Paul Woodbury related to Officer Helms that Carpenter reported he had heard shots fired on Buckskin Mountain and he suspected that deer were being shot.[2] Moreover, Carpenter gave a descrip-tion of a vehicle with Colorado license plates, numbered 7983VV, that he had observed in the immediate area. Officer Helms was also aware that there was no authorized permit or open hunting season within forty miles of Buckskin Mountain at the time.

In addition, Officer Helms obtained more detailed information first hand just prior to pursuing the vehicle on December 10. Helms had driven to the Buckskin Mountain area and happened upon Carpenter and his companion, Gary Dameron. During the course of their conversation, Carpenter related to Helms that, on December 8, he and Dameron had been on Buckskin Mountain photographing deer. While doing so, Carpenter heard a shot and, based on the sound of the shot, thought a deer might have been hit. He went toward the sound of the shooting and found a pickup truck of a particular color, with Colorado license plates, that was parked and unoccupied. Carpenter and Dameron moved their equipment to a location where they could observe the truck, but saw no one that evening. The next day, December 9, Carpenter and Dameron returned to the same area and observed the Colorado truck parked in the same place. Two men in the truck were scoping the mountainside, one with a spotting scope and one with a scope mounted on a rifle.

At this point in the conversation with Officer Helms, Dameron identified an approaching vehicle, by the sound of its muffler, as the one they had observed on Buckskin Mountain. Officer Helms then pursued the vehicle and stopped it. Considering all the information given to Helms and summarized above, Helms was armed with sufficient knowledge to justify at least a reasonable suspicion that Wynn and Smith had been engaged in illegal hunting activity. We hold, therefore, that Wynn and Smith were lawfully stopped.

---

1. Additionally, appellants argue that Utah Code Ann. § 23–20–1(2) (1991), which purports to authorize the vehicle's forfeiture, is unconstitutional and that the sentences imposed on them were unnecessarily harsh. We have considered, but reject, these arguments and decline to address them. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989).

2. The trial court's finding that Carpenter said he saw deer being shot is clearly erroneous. Carpenter reported only a suspicion that such was the case.

■ Moreover, we conclude that the requisite probable cause and exigent circumstances were present to justify Helms's warrantless search under the "automobile exception."[3] *See, e.g., California v. Carney,* 471 U.S. 386, 390–91, 105 S.Ct. 2066, 2068–69, 85 L.Ed.2d 406 (1985).[4] Automobiles may be searched without a warrant under circumstances that would not justify the warrantless search of a house, provided there is probable cause to believe the car contains evidence the officer is entitled to seize. *Chambers v. Maroney,* 399 U.S. 42, 48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419 (1970).

We hold, first, that Officer Helms's reasonable suspicion rose to the level of probable cause after he stopped and approached the vehicle. Officer Helms could now see that the vehicle's license plate number was 7983VV, the one that had been reported to the hotline by Carpenter. In addition, when Helms approached the vehicle and found two male occupants, the driver identified himself as Barrett Wynn. Officer Helms had previously talked to Wynn on December 8, when Wynn had telephoned Officer Helms, identified himself as an artist and photographer, and asked about locations that would afford good opportunities for photographing deer. Surveying the portions of the cab in plain view, Helms noted that there appeared to be no photographic equipment in the vehicle. There was, however, a box of rifle ammunition on the dashboard. Helms's observation that the truck cab contained rifle ammunition but no cameras belied Wynn's earlier claim that the purpose of the outing was to photograph deer, and supported Helms's conclusion that it was to poach deer.

Under these circumstances, and given what he already otherwise knew, Helms had probable cause to believe Wynn and Smith had committed a crime. Though Smith challenges the credibility of Helms's testimony, the trial court was entitled to believe him, and Smith has shown no reason why we should conclude the court's credibility determinations were clearly erroneous.

While the automobile exception as construed by the United States Supreme Court has become largely automatic in its application, the traditional justifications for applying the automobile exception to the warrant requirement were nonetheless present in this case. The truck was traveling on a public road and clearly was "readily movable." Moreover, the vehicle contained weapons and ammunition which Wynn and Smith might have accessed, Helms was the only law enforcement officer on the scene, and these events all took place in a remote area of Utah. Under these circumstances, Officer Helms had no practicable opportunity to obtain a warrant, and his warrantless search of the vehicle was justified.

## FORFEITURE

It is far from clear why Wynn and Smith believe they have standing to appeal the forfeiture of Pamela Wynn's vehicle. Be that as it may, the State has pointed out that the trial court made no findings of fact with respect to the forfeiture, and has conceded that this single issue should thus be remanded. Accordingly, we accept the State's recommendation, and remand this issue to the trial court for proper findings of fact relative to the forfeiture issue.

---

**3.** Smith argues that the automobile exception should not be considered because no argument based on it was made below. On the contrary, the transcript of the trial court's reconsideration of its ruling on the motion to suppress reveals that counsel for the State did in fact explicitly argue that the stop of the vehicle fell within the automobile exception.

**4.** The Utah Supreme Court, interpreting the Utah Constitution, has propounded a considerably more narrow view of the automobile exception. *See State v. Larocco,* 794 P.2d 460, 465–71 (Utah 1990). However, we need not address the argument that Officer Helms's search violated the Utah Constitution because this argument was not raised below. *See State v. Bobo,* 803 P.2d 1268, 1272–73 (Utah App.1990).

## CONCLUSION

We affirm the trial court's conclusion that Officer Helms lawfully stopped and searched appellants' vehicle. As to the forfeiture of the vehicle, however, we accept the State's recommendation to remand this issue to the trial court for additional findings of fact.

BENCH and GREENWOOD, JJ., concur.