STATE of Utah, Plaintiff and Appellee,

v.

Jack D. BROCKSMITH, Defendant
and Appellant.

No. 930146–CA.

Court of Appeals of Utah.

Dec. 29, 1994.

Herm Olsen, Logan, for appellant.

Jan Graham and Kris C. Leonard, Salt Lake City, for appellee.

Before BENCH, BILLINGS and WILKINS, JJ.

## OPINION

WILKINS, Judge:

Jack D. Brocksmith appeals the trial court's denial of his motion to withdraw his plea of guilty on six counts of communications fraud. We affirm.

## FACTS

On July 11, 1989, Brocksmith was arrested in Utah on an Illinois warrant for felony theft. In November of that year, Utah authorities transferred Brocksmith to Illinois custody, at which time Illinois authorities placed him in the Mercer County Jail.

Subsequently, Utah authorities filed an information and notified Illinois of a Utah felony warrant for Brocksmith's arrest. After being sentenced on the Illinois charges, however, Brocksmith was transferred to federal custody for disposition of federal felony

charges pending against him. Utah then notified federal authorities of its felony warrant.

On June 4, 1991, Brocksmith was incarcerated in the Sandstone Federal Correctional Institution in Minnesota. Later that month, Utah lodged an official detainer with the Sandstone authorities and sent a formal request for temporary custody of Brocksmith pursuant to Article IV of the Interstate Agreement on Detainers (IAD), codified in Utah at Utah Code Ann. § 77–29–5 (1990).

After various procedural attempts by Brocksmith to resist extradition, he finally arrived in Utah on February 19, 1992. On May 1 of that year Brocksmith filed a motion to dismiss the Utah felony charges, alleging violations of the IAD as well as violations of his constitutional rights to a speedy trial, due process, and equal protection. Following an evidentiary hearing in October 1992, the trial court denied Brocksmith's motion.

Ultimately, Brocksmith entered a plea of guilty to six counts of felony communications fraud. The plea agreement, signed by Brocksmith, was presented to and accepted by the court on January 14, 1993. The court entered judgment and sentenced Brocksmith on January 20, 1993. Less than three weeks later, Brocksmith filed a motion to withdraw his guilty plea. The trial court denied Brocksmith's motion on February 11, 1993. Brocksmith appeals that decision.

## ISSUE AND STANDARD OF REVIEW

Under section 77–13–6 of the Utah Code, "[a] plea of guilty ... may be withdrawn only upon good cause shown and with leave of the court." Utah Code Ann. § 77–13–6(2)(a) (Supp.1994). Utah courts have declared that a withdrawal of a guilty plea is a privilege, not a right, that is left to the trial court's sound discretion. *State v. Gallegos,* 738 P.2d 1040, 1041 (Utah 1987); *State v. Thorup,* 841 P.2d 746, 747 (Utah App.1992), *cert. denied,* 853 P.2d 897 (Utah 1993). Ac-

cordingly, we will not disturb a trial court's determination that the defendant has failed to show good cause or its ultimate denial of the motion to withdraw the guilty plea "unless it clearly appears that the trial court abused its discretion." *State v. Trujillo–Martinez,* 814 P.2d 596, 599 (Utah App.1991), *cert. denied,* 843 P.2d 516 (Utah 1992); *accord Thorup,* 841 P.2d at 747.

To withdraw the guilty plea, Brocksmith has the burden to show good cause. *See Thorup,* 841 P.2d at 748. Brocksmith has not challenged the validity of the plea itself.[1] Instead, he relies on alleged misconduct by the state prior to entry of the plea as good cause for withdrawing the plea. Brocksmith claims that the state violated his rights under the IAD, violated his rights to a speedy trial under the federal and state constitutions, and thereby denied him due process and equal protection of the laws.

Essentially, the dispositive issue is whether Brocksmith has waived these rights by the voluntary entry of an unconditional guilty plea. If he has waived these rights, he cannot show good cause for withdrawal of his plea. To resolve this issue, we need to first determine whether these IAD and constitutional rights can be waived. Then we must determine whether voluntary entry of an unconditional guilty plea effectively waives these rights.

## ANALYSIS

Utah adopted the IAD in 1967. 1967 Laws of Utah ch. 205, § 1. Utah's version of the IAD is identical to that adopted by forty-seven other states and the District of Columbia. *Crosland v. State,* 857 P.2d 943, 945 (Utah 1993). In addition, the IAD is an interstate compact, sanctioned by Congress under the Compact Clause of the United States Constitution. *Cuyler v. Adams,* 449 U.S. 433, 438, 101 S.Ct. 703, 706–07, 66 L.Ed.2d 641 (1981); *see also* U.S. Const. art. I, § 10, cl. 3. As such, the IAD is governed

---

1. A trial court's failure to comply strictly with Rule 11 of the Utah Rules of Criminal Procedure in accepting a guilty plea is good cause, as a matter of law, for the withdrawal of that plea. *State v. Smith,* 812 P.2d 470, 476 (Utah App. 1991), *cert. denied,* 836 P.2d 1383 (Utah 1992);

*see also State v. Jennings,* 875 P.2d 566, 569 (Utah App.1994) (holding that trial court has abused discretion as matter of law if it does not permit withdrawal of plea not made in strict compliance with Rule 11).

by federal law even though codified as a Utah statute. *See Crosland,* 857 P.2d at 944–45 & n. 2.

■ The Tenth Circuit Court of Appeals has concluded that the "rights created by the IAD[ ] are statutory, not fundamental, constitutional, or jurisdictional in nature." *Greathouse v. United States,* 655 F.2d 1032, 1034 (10th Cir.1981) (per curiam), *cert. denied,* 455 U.S. 926, 102 S.Ct. 1289, 71 L.Ed.2d 469 (1982); *accord Yellen v. Cooper,* 828 F.2d 1471, 1474 (10th Cir.1987). Accordingly, "a prisoner may waive his rights under" the IAD. *Gray v. Benson,* 608 F.2d 825, 827 (10th Cir.1979) (per curiam); *accord Yellen,* 828 F.2d at 1474. Every other federal circuit addressing the question has reached the same conclusion. *See, e.g., United States v. Lawson,* 736 F.2d 835, 837–38 (2d Cir.1984) (holding that IAD rights are statutory, not constitutional, and can be voluntarily waived); *Kowalak v. United States,* 645 F.2d 534, 536–37 (6th Cir.1981) (concluding that IAD rights are nonjurisdictional and waivable); *Camp v. United States,* 587 F.2d 397, 400 (8th Cir.1978) (holding that violation of IAD's Article IV(e) is nonjurisdictional error, waivable by criminal defendant); *United States v. Black,* 609 F.2d 1330, 1334 (9th Cir.1979) (stating that IAD protections are not founded on constitutional rights and can be waived), *cert. denied,* 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980). In addition to the federal courts, several state courts have concluded that IAD rights are waivable. *See, e.g., State v. Carter,* 151 Ariz. 532, 729 P.2d 336, 338 (App.1986) (holding that IAD speedy trial limits can be waived and that their violation does not deprive court of jurisdiction); *People v. Nitz,* 219 Cal.App.3d 164, 268 Cal.Rptr. 54, 56–57 (1990) (stating that IAD merely amounts to set of procedural rules and can be waived as any other nonjurisdictional defect or error); *Sherman v. State,* 107 Idaho 869, 693 P.2d 1071, 1072

(App.1984) (per curiam) (holding violation of IAD is nonjurisdictional error, waivable by defendant); *State v. Ternaku,* 156 N.J.Super. 30, 383 A.2d 437, 439 (App.) (concluding that defendant waived his IAD rights), *cert. denied,* 77 N.J. 479, 391 A.2d 494 (1978).

Brocksmith argues that the language of Article IV, section (e) of the IAD clearly evidences the IAD's jurisdictional nature. That provision states that if the IAD's speedy trial limits have been violated, the "indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." Utah Code Ann. § 77–29–5 (1990). Based on this IAD language, Brocksmith argues that the trial court lost jurisdiction because of the alleged IAD violations and could not thereafter accept his guilty plea. Nevertheless, Article IV, section (e) merely establishes dismissal as the procedural remedy for IAD violations and in no way deprives the court of jurisdiction.[2]

Thus, we conclude that the protections afforded under the IAD are not jurisdictional in nature. Accordingly, Brocksmith could waive his right to assert any violations of the IAD as he could any other nonjurisdictional error.

■ The State asserts that Brocksmith did indeed waive his IAD rights by voluntarily entering an unconditional guilty plea. We agree. In *State v. Smith,* 833 P.2d 371, 372 (Utah App.1992), this court held that "[a] voluntary plea of guilty ... constitutes a waiver of the right to appeal all nonjurisdictional issues." *See also Kowalak,* 645 F.2d at 536; *Camp,* 587 F.2d at 399; *Carter,* 729 P.2d at 338; *Nitz,* 268 Cal.Rptr. at 57; *Sherman,* 693 P.2d at 1072; *Ternaku,* 383 A.2d at 439.

Brocksmith does not challenge the voluntariness of his guilty plea or any other aspect affecting the plea's validity. Furthermore,

---

**2.** Brocksmith's argument also runs counter to the above-cited courts' constructions of identical language contained in other versions of the IAD. For example, in *Camp,* the court concluded that:

> The sanctions contained in IV(e) of the IAD go not to the authority or jurisdiction of the court but rather to the power of the prosecution to proceed against a person charged with a crimi-

nal offense.... The sanction of dismissal with prejudice contained in Article IV(e), then, is a relatively severe sanction designed to compel prosecutorial compliance with the procedures set forth in the IAD. It is, however, a sanction without effect on the jurisdiction of the district court.

*Camp,* 587 F.2d at 399 n. 4.

his guilty plea was unconditional. Brock-smith expressly stated in his plea agreement:

j. I understand that by pleading guilty I am waiving my statutory and constitutional rights to file an appeal.

k. I know that by entering pleas of guilty, I am admitting and do so admit, that I have committed the conduct alleged and that I am guilty of the crimes for which my pleas are entered. I further understand that I am pleading guilty unconditionally and that I am not preserving any issues for appeal relative to the Court's rulings on pre-trial motions or based upon statutory or constitutional challenges in this case.

At oral argument, Brocksmith's attorney pointed out that none of the express waivers contained in Brocksmith's plea agreement mentioned the IAD. Accordingly, he argued that only if Brocksmith had specifically waived his IAD rights could his guilty plea constitute a valid waiver.

■ Nevertheless, our opinion in *Smith* simply requires the plea to be voluntary. *Smith*, 833 P.2d at 372. It does not require that the plea itself contain an express, knowing, and intelligent waiver in order to properly waive nonjurisdictional issues. "Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." *Schneckloth v. Bustamonte*, 412 U.S. 218, 237, 93 S.Ct. 2041, 2052–53, 36 L.Ed.2d 854 (1973), *quoted in Lawson*, 736 F.2d at 837. Indeed, the "knowing and intelligent" standard has only been required to waive those rights "that guarantee the defendant a fair trial and protect the reliability of the truth-determining process." *Lawson*, 736 F.2d at 839.

The IAD rights involved in our·case have "little to do with fairness of the defendant's trial or the reliability of the truth-seeking process." *Id.* As one California court pointed out, "[t]he IAD amounts to nothing more than a set of procedural rules, and the rights it protects in no way affect the fairness and accuracy of the factfinding procedure or other due process or trial rights." *Nitz*, 268 Cal.Rptr. at 57.

For these reasons, the *Lawson* court concluded that a criminal defendant need not actually "know" his or her rights under the IAD in order to waive its protections; rather, the defendant merely needs to have "knowledge of or reason to know the basic fact that gives rise to the IAD right." *Lawson*, 736 F.2d at 838, 839; *see also Yellen*, 828 F.2d at 1474 (concluding that "knowing and intelligent" standard is not appropriate test for determining whether there has been waiver of IAD rights). In the instant case, Brocksmith was not only aware of the "basic facts" allegedly giving rise to his IAD rights, but he was also aware of his actual IAD rights. Brocksmith filed a motion to dismiss based on a violation of those rights prior to his pleading guilty.

■ Thus, we conclude that Brocksmith has waived his right to assert on appeal that the state violated his IAD rights. Similarly, Brocksmith has foreclosed inquiry into his federal and state constitutional rights to a speedy trial by pleading guilty. *See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the ·entry of the guilty plea."). Brocksmith has failed to properly raise any jurisdictional issues or any issues requiring a knowing and intelligent waiver. Accordingly, he has waived all of his claims by virtue of his guilty plea, and we will not consider them on appeal.

## CONCLUSION

The IAD provides criminal defendants with nonjurisdictional rights that they can voluntarily waive. Because Brocksmith voluntarily entered an unconditional plea of guilty, he effectively waived his right to assert violations of the IAD, violations of his federal and state constitutional rights to a speedy trial, and violations of his due process and equal protection rights as alleged in his brief. Unable to assert these alleged violations on appeal, Brocksmith has failed to

show good cause for withdrawing his guilty plea. Accordingly, the trial court did not abuse its discretion in denying Brocksmith's motion to withdraw his plea. We affirm.

BENCH and BILLINGS, JJ., concur.