**STATE of Utah, Plaintiff and Appellee,**

v.

**James F. GARDNER, Defendant and Appellant.**

**No. 900225.**

Supreme Court of Utah.

Dec. 2, 1992.

R. Paul Van Dam, J. Kevin Murphy, Salt Lake City, for plaintiff and appellee.

Kenneth G. Anderton, Vernal, for defendant and appellant.

HALL, Chief Justice:

James F. Gardner appeals from an order denying his motion to withdraw his guilty plea. We affirm.

In March of 1985, Gardner was arrested for a beating death that occurred in Vernal, Utah. Subsequent to his arrest, and after he was advised of his *Miranda* rights, Gardner made two statements to the police admitting the killing. On April 2, 1985, Gardner entered a plea of guilty to depraved indifference homicide, a first degree felony.[1] In exchange for this plea, the prosecution agreed not to pursue a capital homicide charge, forgery charges, theft charges, and a possible habitual criminal charge.

At the plea hearing, the prosecutor gave the following account of the killing. After spending the day consuming drugs and alcohol, Gardner went to a convenience store to purchase beer. At the store, he met the victim, who invited him to his apartment. While at the apartment, the victim kissed Gardner. Enraged by this act, Gardner kicked the victim in the face, knocking him to the floor. Gardner continued the beating as the victim lay helpless. After rendering the victim unconscious, Gardner searched the apartment and gathered items of personal property to take with him when he left. Then, as Gardner was preparing to leave, the victim attempted to get to his feet. Gardner instigated a second attack, kicking the victim in the head and neck

area. The victim died from the blows. After Gardner confirmed the prosecutor's description of the beatings, the trial court accepted the plea. The court sentenced Gardner to a term of five years to life in the Utah State Prison.

On May 19, 1988, approximately three years after he pleaded guilty, Gardner filed a pro se motion asserting that his plea was entered involuntarily. He was appointed counsel, who filed a supplemental motion to withdraw the plea. A hearing was held on these motions before a different judge. After reviewing the documentary evidence and the testimony offered at that hearing, the trial court denied the motion.

On appeal, Gardner claims, inter alia, (1) that he did not enter the plea knowingly and voluntarily because he was not aware of the elements of depraved indifference homicide and the relationship of the law to the facts at the time of the plea; (2) that he was induced to enter the plea by an illusory promise made by the prosecution; and (3) that he was denied his constitutional right to effective assistance of counsel. In addition, Gardner claims that article III, ordinance 2 of the Utah Constitution divests the state of jurisdiction over crimes committed by a Ute Indian in any area of the state that the Ute Indian Tribe traditionally inhabited.

As a threshold matter, we note that the instant plea was taken prior to our decision in *State v. Gibbons.*[2] Therefore, the rule announced in *Gibbons* that guilty pleas may be withdrawn if the trial court did not strictly comply with the rules governing the taking of pleas does not apply in the instant case.[3] Rather, we follow our pre-*Gibbons* decisions and uphold an order denying a motion to withdraw a plea if " 'the record as a whole affirmatively establishes that the defendant entered his plea with full knowledge and understanding of its consequences and of the rights he was waiving.' "[4]

---

1. Utah Code Ann. § 76–5–203(1)(c), (2).

2. 740 P.2d 1309 (Utah 1987).

3. *See State v. Hoff,* 814 P.2d 1119, 1123–24 (Utah 1991) (*Gibbons* should not be applied to guilty pleas taken before it was issued).

4. *Jolivet v. Cook,* 784 P.2d 1148, 1149 (Utah 1989) (quoting *State v. Miller,* 718 P.2d 403, 405

We review the ultimate decision to deny a motion to withdraw a guilty plea under an abuse of discretion standard.[5] However, when a trial judge makes findings of fact in conjunction with its decision, those findings will not be set aside unless they are clearly erroneous.[6] Findings are clearly erroneous only if they "are against the clear weight of the evidence, or ... the appellate court otherwise reaches a definite and firm conviction that a mistake has been made."[7]

We turn first to the claim that Gardner did not understand the elements of depraved indifference homicide and the relationship of the law to the facts at the time of his plea. Specifically, Gardner claims that he did not understand that by pleading to depraved indifference homicide he admitted to *knowingly* " 'engag[ing] in conduct that created a grave risk of death to another.' "[8] Rather, Gardner argues that he was under the impression that simply engaging in such conduct was sufficient to invoke liability under the depraved indifference statute. Furthermore, he claims that at the time of the beating, he did not know that his action created a grave risk of death. This claim, if true, would require the plea to be set aside.[9]

However, despite Gardner's assertions, the trial court specifically found that at the time of his plea, Gardner understood the elements of depraved indifference homicide and knowingly and voluntarily admitted committing the offense. Therefore, the precise issue before this court is whether this finding is clearly erroneous.

■ Gardner maintains that during the plea hearing, the court did not inquire whether he knowingly engaged in conduct that created a grave risk of death. Gardner also contends that at one point in the hearing, he stated that he did not know what he was doing when he kicked the victim. Notwithstanding these arguments, the record supports the trial court's finding. During the plea hearing, after Gardner stated that he did not know what he was doing when he kicked the victim, the trial court inquired into the facts surrounding the killing. Describing the beating, the prosecutor stated that Gardner had sufficient time between the two beatings to recover from his outrage and that Gardner was not acting in the heat of passion when he instigated the second beating. Gardner admitted those facts. The trial court found that "the effect of his action in adopting the statement of the prosecutor was to abandon his prior statement that he did not know what he was doing and adopt a factual version which indicated that he, knew what he was doing when he initiated the second attack."

This finding is also supported by the fact that the prosecutor's description of the killing was consistent with the descriptions of the beatings Gardner recounted to the police, his family, his friends, and his attorney prior to the plea hearing. Furthermore, the record indicates that prior to the plea hearing, Gardner's attorney advised him of the various ways that homicide could be committed under the first and second degree homicide statutes, including the mens rea requirement under the depraved indifference statute. The trial court thus did not err in finding that Gardner was aware of all the elements of the crime to which he pleaded guilty and how the facts related to the law.

Gardner next claims that he was induced to enter his plea by illusory promises made by the prosecution. Specifically, he contends that he entered his plea in reliance on the prosecution's promise not to pursue a

(Utah 1986)); *see also Brooks v. Morris,* 709 P.2d 310, 311 (Utah 1985); *Warner v. Morris,* 709 P.2d 309, 310 (Utah 1985).

5. *State v. Mildenhall,* 747 P.2d 422, 424 (Utah 1987).

6. Utah R.Civ.P. 52(a); *Jolivet,* 784 P.2d at 1150.

7. *State v. Walker,* 743 P.2d 191, 193 (Utah 1987).

8. *State v. Fontana,* 680 P.2d 1042, 1046–47 (Utah 1984) (quoting Utah Code Ann. § 76–5–203(1)(c)).

9. *McCarthy v. United States,* 394 U.S. 459, 471–72, 89 S.Ct. 1166, 1173–74, 22 L.Ed.2d 418 (1969); *see also Gibbons,* 740 P.2d at 1312; *State v. Breckenridge,* 688 P.2d 440, 443–44 (Utah 1983).

capital homicide charge and a habitual criminal charge and that under the facts, the prosecution could not obtain a conviction on either charge.

In making this argument, Gardner relies on *State v. Copeland.*[10] In *Copeland*, the defendant pleaded guilty to the charge of sodomy on a child, with the understanding that the state would recommend that he be confined in a mental hospital rather than prison. However, under the applicable law, the court had no discretion to sentence the defendant to a hospital, and therefore, the court sentenced him to prison.[11] We held that because the defendant entered his " 'plea with an exaggerated belief in the benefits of his plea,' " his plea should not be considered voluntary.[12]

■ The instant case, however, differs from *Copeland*. First, as to the capital homicide charge, a person commits capital homicide if he or she "intentionally or knowingly causes the death of another" under specific enumerated circumstances.[13] Here, the trial court found that the prosecution had a good faith belief that Gardner could be convicted of capital homicide, and it is clear that a conviction of capital homicide was possible.

As the trial judge noted, a jury would not necessarily believe Gardner's testimony concerning his mental state during the killing and could reasonably conclude that by administering such a severe beating, Gardner intended to, or knew that his actions would, cause the death of the victim. Furthermore, the record establishes that Gardner committed a robbery during the course of the beating, an enumerated circumstance that elevates an intentional or knowing killing to capital homicide.[14] Because a conviction of capital homicide was possible, the prosecution's agreement to forego the filing of these charges was not illusory and does not render Gardner's plea involuntary.

■ As to the habitual criminal charge, the trial court found that at the time of his plea, Gardner's criminal record would not support a charge under Utah's habitual criminal statute.[15] Nevertheless, this fact is not dispositive.

The trial court specifically found:

[T]he parties were unsure of whether the Defendant's prior record would support a charge under the Habitual Criminal Statute.... [T]he Defendant was brought before the Court to enter a plea at his own insistence and prior to the time when either party had been able to sort out the facts concerning [his prior] convictions.... [T]he state never indicated that it had facts which would support the charge. This was merely a possible charge which was cleared up in the process of the plea bargain.... There is no indication that the state did not act in good faith in its belief that this was a possible charge. Further, the statements of the Defendant at the hearing on this motion make it clear that he was only concerned (understandably) about the filing of capital homicide charges.... The dismissal of [the habitual criminal] charge was merely an attempt to clear up all possible pending charges within Uintah County....

These findings are adequately supported by the record.

Given these facts, the prosecution's promise not to pursue a "possible" habitual criminal charge was not illusory. When he gave his plea, Gardner knew that the prosecution did not have sufficient facts to bring a habitual criminal charge. Therefore, Gardner did not have an "exaggerated belief in the benefit of the plea." Furthermore, because Gardner did not rely on the prosecution's promise not to pursue this

---

**10.** 765 P.2d 1266 (Utah 1988).

**11.** *Id.* at 1274–75.

**12.** *Id.* at 1275 (quoting *People v. Lawson*, 75 Mich.App. 726, 255 N.W.2d 748, 750 (1977)); *see also State v. Garfield*, 552 P.2d 129, 130 (Utah 1976); *Hammond v. United States*, 528 F.2d 15, 19 (4th Cir.1975).

**13.** Utah Code Ann. § 76–5–202.

**14.** *See* Utah Code Ann. § 76–5–202(1)(d); *id.* § 76–6–301; *State v. Tillman*, 750 P.2d 546, 571, 580 (Utah 1987).

**15.** Utah Code Ann. § 76–8–1001.

charge, his plea cannot be considered involuntary. In sum, the trial court did not abuse its discretion in denying Gardner's motion to withdraw his plea on this ground.

Gardner also claims that he was denied his constitutional right to effective assistance of counsel.[16] Specifically, he claims that his trial counsel did not fully apprise him of all possible defenses and did not undertake a reasonable investigation into the exact cause of the victim's death.[17]

■ To prevail in an ineffective assistance claim, a criminal defendant must meet a two-part test. First, the defendant must " 'show that counsel's performance was deficient.' "[18] In doing so, the defendant must " 'identify the acts or omissions' which, under the circumstances, 'show that counsel's representation fell below an objective standard of reasonableness.' "[19] In addition, the defendant must show prejudice.[20] That is, the defendant " 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' "[21]

■ The record does not support the claim that defense counsel was ineffective because he did not fully apprise Gardner of all available defenses. On the contrary, the record reveals that Gardner was fully apprised of the defenses available to him. Moreover, at the time the plea was taken, the trial court queried, "You understand from what you have described to me, Mr. Gardner, the county attorney will have a difficult time making out a case of [depraved indifference homicide]." Gardner responded that he understood this fact but he nevertheless wanted to enter·a plea. Thus, there was no error on the part of

Gardner's counsel concerning apprisal of available defenses.

■ Gardner further argues that his counsel failed to reasonably investigate the exact cause of the victim's death. As a consequence, no one discovered that the medical examiner was unable to determine whether the victim died as a result of the first beating, the second beating, or both.

While the record supports Gardner's factual assertions, it does not follow that the assistance of defense counsel " 'fell below an objective standard of reasonableness.' "[22] The record reveals that Gardner's counsel was aware that the second beating might not have contributed to the victim's death and that he discussed this possibility with Gardner. Nevertheless, Gardner insisted that he did not want to proceed to trial.

Defense counsel's decision to acquiesce in Gardner's wishes without investigating further into the exact cause of death does not constitute ineffective assistance. As the trial court noted, Gardner could have been convicted of capital or second degree homicide absent medical proof that the second beating contributed to the victim's death. Moreover, Gardner received substantial benefits from his plea bargain. He avoided a possible conviction of capital homicide as well as a conviction of aggravated robbery, a charge that would likely be brought along with the capital homicide charge and carries the same sentence as depraved indifference homicide.[23] Indeed, the prosecution had a strong case of aggravated robbery and could have succeeded with this charge even if it did not obtain a conviction of capital or depraved indifference homicide. In addition, Gardner avoided convictions on three third degree felony

---

**16.** *See* U.S. Const. amend. VI.

**17.** Gardner also claims that his attorney did not advise him of the knowing element of depraved indifference homicide. Because we have already upheld the trial court's finding that Gardner was aware of this element at the time of his plea, we do not address this claim.

**18.** *State v. Templin,* 805 P.2d 182, 186 (Utah 1990) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (footnotes omitted)).

**19.** *Id.* (quoting *Strickland,* 466 U.S. at 688, 690, 104 S.Ct. at 2064–65, 2065–66).

**20.** *Id.*

**21.** *Id.* at 187 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

**22.** *Id.* at 186 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065).

**23.** *See* Utah Code Ann. § 76–6–302.

forgery charges and an auto theft charge. In light of these facts, it is clear that Gardner was not denied effective assistance of counsel, and the trial court did not abuse its discretion in denying the motion to withdraw the plea on that basis.

Gardner also claims that article III, ordinance 2 of the Utah Constitution divests the state of jurisdiction over crimes committed by a Ute Indian in any area of the state traditionally inhabited by the Ute Indian tribe. While this claim was not raised below, Gardner argues that it can be raised for the first time on appeal because it deals with the court's subject matter jurisdiction.[24] Therefore, Gardner asks that this issue be remanded for a determination of whether he can be legally considered a Ute Indian and whether Vernal lies within an area of the state traditionally inhabited by the Ute Indian Tribe.

There appears to be no basis for remand because Gardner's argument is based on an erroneous legal proposition, i.e., his interpretation of the state constitution. Article III, ordinance 2 provides:

> The people inhabiting this State do affirm and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries hereof, and to all land lying within said limits owned or held by any Indian or Indian tribes, and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States.

Gardner interprets the term "Indian lands" to include all territory traditionally inhabited by a specific Indian tribe.

■ The difficulty with this argument is that prior to statehood, the federal government instituted a system for providing Indians and specific Indian tribes with allotments of federal land, some of which lie within the boundaries of Utah.[25] Indeed, the Uintah–Ouray Indian Reservation was established prior to statehood.[26] Extensive federal law defines what constitutes Indian land and what rights and powers Indians have in connection with it.[27]

We therefore interpret the term "Indian lands" in article III, ordinance 2 as land established as such by federal law, as opposed to land traditionally inhabited by specific Indian tribes. Because Gardner does not claim that Vernal is within the boundaries of Indian lands, as defined by federal law, he does not state a valid claim concerning the state of Utah and Uintah County's subject matter jurisdiction.

We have duly reviewed the remaining claims raised on appeal and find them to be without merit.[28]

Affirmed.

HOWE, A.C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

---

24. *See State v. Perank,* 191 Utah Adv.Rep. 5 (July 17, Utah 1992); *Glasmann v. Second District Court,* 12 P.2d 361, 363 (Utah 1932).

25. *See generally State v. Perank,* 191 Utah Adv. Rep. 5 (July 17, Utah 1992); *Ute Indian Tribe v. State of Utah,* 521 F.Supp. 1072 (D.Utah 1981).

26. *See Ute Indian Tribe,* 521 F.Supp. at 1075.

27. *See generally* 18 U.S.C. § 1151 (1982); *Ute Indian Tribe,* 521 F.Supp. at 1075–78.

28. *See State v. Carter,* 776 P.2d 886, 888–89 (Utah 1989).