**STATE of Utah, Plaintiff and Appellee,**

v.

**James Earl BLAIR, aka James Earl Smith, Defendant and Appellant.**

No. 910542.

Supreme Court of Utah.

Dec. 3, 1993.

R. Paul Van Dam, Atty. Gen., Charlene Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

David O. Leavitt, Fillmore, for defendant and appellant.

HALL, Chief Justice:

Defendant James Earl Blair, aka James Earl Smith, appeals from the trial court's denial of his motion to withdraw his guilty plea to the offense of first degree murder. We affirm.

On March 1, 1978, Blair and William Lloyd Eastwood were arrested in connection with the murder of Robyn LeRoy Halsey. Halsey was found on the side of the road near Scipio, Utah, dead from a shotgun wound to his chest. Blair and Eastwood initially claimed that they were not involved in the murder, and a single public defender was appointed to represent them.

While the two men were in jail, Blair told another inmate and a deputy county sheriff that he and Eastwood were hitchhiking and were picked up by Halsey. Blair also said that he shot Halsey in the course of robbing him. Around the same time, the public defender became aware of Blair's statement and withdrew from representing Eastwood to avoid a conflict of interest. Another attorney was assigned to represent Eastwood.

At their preliminary hearing in June 1978, Eastwood testified that Blair was the one who shot Halsey. Blair confirmed this version of events to the prosecutor on the case as he was being transported back to jail. After the preliminary hearing, however, Blair tried to contact his attorney because he wanted to change his account of how the murder happened. After several failed attempts to do so, Blair instead contacted the prosecutor and on July 5, 1978, made a statement after waiving his *Miranda* rights.

In the statement, Blair related the facts of the murder as follows: In the early evening of March 20, 1978, Halsey picked up Blair and Eastwood as they were hitchhiking near Scipio, Utah. After drinking beer with Eastwood and Blair, Halsey agreed to drive the two men to Interstate 70 in Salina, Utah. On the way to Salina, Eastwood whispered to Blair that he wanted to rob Halsey and steal his pickup truck, and he asked if Blair "was with him." Blair said "sure." Shortly thereafter, the trio pulled off the road for a rest stop. Eastwood removed Halsey's shotgun from the gun rack in the cab of the truck and professed a desire to try the gun. Halsey directed Eastwood to shoot at a fence line in the distance. Instead, Eastwood turned and shot Halsey in the chest. As Halsey lay on the ground mortally wounded, Eastwood took his wallet and the keys to the truck. Blair then grabbed Halsey by the wrists, dragged him over to the passenger door, and put him in the truck. With Eastwood driving, the three drove for five or six miles before pulling off the road again. Blair stated that during that time Halsey was still alive, although he was making "drowning" or "gurgling" noises. Blair removed Halsey from the truck and placed him along the road in some sagebrush. The two men then headed toward Green River, Utah, in Halsey's truck and abandoned it soon thereafter when it ran out of gas.

Blair's July 5 statement (the "second version") conflicted with the story recounted previously by both Blair and Eastwood because it placed blame for the actual shooting on Eastwood instead of Blair. At Blair's plea hearing on July 25, 1978, he pleaded guilty to murder in the first degree. In return for his plea, the prosecution agreed not to seek the death penalty. When asked to recount the facts of the crime, Blair told the court that *he*, not Eastwood, shot Halsey:

The Court: Tell me what you did.

Blair: I shot the man.

. . . .

. . . Mr. Halsey brought us to Fillmore. And Bill [Eastwood] decided he was going back to Illinois and I decided I was going to Kansas City, Kansas. And on the way back to I–70, Mr. Halsey pulled over. Mr. Halsey got out. Bill got out. I got out, and I pulled the gun out, as I did, and shot him.

The Court: All right. And why did you pull the gun out?

Blair: I was going to rob the man.

The Court: All right, so you took the gun out for the purposes of robbing.one Robyn LeRoy Halsey, is that right?

Blair: Yes.

. . . .

The Court: All right. And in the course of that you shot him?

Blair: Yes.

The Court: How many times?

Blair: Once.

The Court: And that's why you plead guilty?

Blair: Yes.

Although Blair, his attorney, and the prosecutor were all aware that prior to the plea hearing, Blair told a different version of the facts, no one brought it to the court's attention before the trial judge accepted Blair's guilty plea.

After pleading guilty, Blair was transferred to the Utah State Prison for a ninety-day diagnostic evaluation. While at the prison, he told the evaluator that Eastwood actually shot Halsey. When asked why he did not tell this to the judge, Blair stated for the first time that he and Eastwood entered into a deal in which Blair promised to admit to the shooting and in return Eastwood would sue the State for wrongful arrest and civil rights violations and share the proceeds with Blair when Blair got out of prison. Blair stated that he wanted to tell the truth because he realized that Eastwood had no intention of keeping his part of the bargain. The evaluator then informed the trial court that Blair's story was inconsistent with the version told at the plea hearing.

On its own motion, the trial court held a special hearing on October 17, 1978, to determine whether Blair wanted to withdraw his guilty plea. Prior to this hearing, Blair conferred with his attorney at length. His attorney advised him that even if he did not pull the trigger, he could be found guilty as

an accomplice to first degree murder if a jury believed that he had the intent to commit all the elements of the crime. Based on the facts that (1) Blair stated previously to both the prosecutor and a deputy sheriff that he pulled the trigger, (2) Eastwood would most likely testify against Blair at trial since he had done so at the preliminary hearing,[1] and (3) Blair was intent on avoiding a trial in which he would be exposed to the risk of the death penalty, Blair's attorney advised him to stay with his plea. Blair accepted that advice.

The trial court subsequently gave Blair a sentence of five years to life, with a firearm enhancement. On January 11, 1990, approximately eleven and one-half years later, Blair moved to withdraw his guilty plea. An evidentiary hearing on the motion was held before Judge Ray Harding. After reviewing the documentary evidence and hearing testimony from Blair, his former attorney, and others, Judge Harding denied the motion. Blair now appeals.

Before this court, Blair claims, inter alia, that (1) he did not enter the plea knowingly and voluntarily because he was not aware of the elements of the crime and the relationship of the law to the facts at the time of the plea; (2) the prosecution's failure to disclose the contents of the July 5 statement prejudiced him; and (3) he was denied his constitutional right to effective assistance of counsel.

## I. ADEQUACY OF GUILTY PLEA

We review a trial court's denial of a motion to withdraw a guilty plea under an abuse-of-discretion standard.[2] The trial court's findings of fact made in conjunction with its decision will not be set aside unless they are clearly erroneous.[3] Because Blair's plea was taken prior to our decision in *State v. Gibbons*,[4] the rule announced in *Gibbons* that guilty pleas may be withdrawn if the trial court did not strictly comply with the

1. From the record, it appears that part of Eastwood's plea to second degree murder included his promise to testify against Blair at trial.

2. *State v. Gardner*, 844 P.2d 293, 295 (Utah 1992); *State v. Mildenhall*, 747 P.2d 422, 424 (Utah 1987).

3. Utah R.Civ.P. 52(a); *Gardner*, 844 P.2d at 295.

4. 740 P.2d 1309 (Utah 1987).

rules concerning the taking of pleas does not govern.[5] Instead, we uphold a decision denying a motion to withdraw a guilty plea if " 'the record as a whole affirmatively establishes that the defendant entered his [or her] plea with full knowledge and understanding of its consequences and of the rights he [or she] was waiving.' "[6]

Blair alleges that he agreed to stay with his plea because he falsely believed, based on his attorney's representations, that he could be held liable for the crime just by being at the crime scene even though he professed no prior knowledge that Eastwood intended to kill Halsey. Moreover, although Blair concedes that the trial court followed the correct procedures for accepting his plea at the initial plea hearing on July 25, 1978, he claims that at the hearing on October 17, 1978, the trial court failed to inquire again whether Blair understood the elements to which he was pleading given the change in his story.

Following the evidentiary hearing on the motion to withdraw the guilty plea, Judge Harding made specific findings that Blair entered his guilty plea knowingly and voluntarily. Judge Harding found that defendant understood the elements of the crime, how those elements related to the facts, and that he entered his plea to avoid the possibility of the death penalty if the case went to trial.

Judge Harding's conclusion that Blair understood the elements of the crime charged and the relationship between the law and facts is supported by the record. Under Utah's accomplice liability statute, section 76–2–202 of the Utah Code, a person is criminally liable for the acts of another if he or she, while acting with the mental state required for the commission of the offense, "solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense."[7]

Blair claims that his plea was not knowing and voluntary because he never had the intent to kill Halsey and therefore could not be liable as an accomplice to first degree murder. However, as Blair's counsel informed him on several occasions, a jury would not necessarily believe that he lacked the intent to commit the murder.[8]

A review of Blair's second version of events reveals that under that scenario, a jury could find that Blair knew that Eastwood intended to rob and kill Halsey and that Blair willingly acquiesced in the plan: Blair admitted that he knew Eastwood was planning to rob Halsey and take the victim's money, and he told Eastwood that he would go along with the plan. He also admitted loading Halsey into the truck while the victim was still alive and then dumping him on the side of the road to die. He removed Halsey's money from the wallet and aided Eastwood in disposing of evidence of the crime from Halsey's truck. Blair and Eastwood then proceeded to Green River, Utah, in the victim's truck, and Blair was still with Eastwood when the two were arrested the next day.

Hence, even under the second version, a jury could have reasonably believed that Blair acted with the intent necessary to be found guilty of the crime despite his claims to the contrary.[9] Defense counsel informed Blair of this possibility on several occasions before the October 17 hearing. Based on that knowledge, Blair chose to maintain his original plea so that he could avoid the death penalty. We find no error with Judge Harding's conclusion that Blair understood the elements of the crime and the relation of the facts to the law.

■ Blair's next assertion, that the trial court should have inquired more deeply into Blair's profession of innocence before accept-

---

5. *Gardner,* 844 P.2d at 294; *State v. Hoff,* 814 P.2d 1119, 1124 (Utah 1991).

6. *Jolivet v. Cook,* 784 P.2d 1148, 1149 (Utah 1989) (quoting *State v. Miller,* 718 P.2d 403, 405 (Utah 1986)), *cert. denied,* 493 U.S. 1033, 110 S.Ct. 751, 107 L.Ed.2d 767 (1990); *see also Gardner,* 844 P.2d at 294.

7. Utah Code Ann. § 76–2–202.

8. *See Gardner,* 844 P.2d at 296 (noting that a jury would not necessarily believe defendant's testimony concerning his mental state during a murder).

9. We also note that a jury could have disregarded the second version altogether and found that Blair did in fact fire the fatal shot.

807

ing his guilty plea, also lacks merit. Upon learning that Blair had changed his story, the trial court called a special hearing for the sole purpose of allowing Blair to withdraw his plea if he so desired. At that hearing, the following colloquy took place:

The Court: Now, then, you are back before this Court with your attorney for the purposes of having this Court determine whether or not you desire to change your position in any respect. Do you understand that?

Blair: Yes, sir.

The Court: No one should enter a plea of guilty to a criminal offense, and certainly not a criminal offense of first degree murder, which may be a capital offense, unless they are in fact guilty of that offense. Do you understand that?

Blair: Yes, sir.

The Court: And if you. desire, and after consulting with your attorney, to withdraw your plea of guilty and enter your plea of not guilty, this Court will set the matter down for trial before a jury of 12 persons. Do you understand that?

Blair: Yes, sir.

The court then advised Blair that if he decided to withdraw his plea, the fact that he originally pleaded guilty would not be used against him in court. All the rights to which Blair would be entitled if he proceeded to trial were recited again. Nonetheless, Blair decided to maintain his guilty plea.

The record indicates that the trial court gave Blair ample opportunity to withdraw his plea. However, Blair was intent on avoiding the death penalty and therefore determined that it was in his best interests to plead guilty. Moreover, Blair had several opportunities when he was before the court to apprise the court of his professed "innocence." [10] Instead, he repeatedly accepted full responsibility for the shooting.

Finally, we note again that a jury could have determined that Blair was guilty of first degree murder as an accomplice even if he did not pull the trigger. We therefore agree with Judge Harding's statement in the findings of fact that "[Blair] has made no showing that he is an innocent man who has [pleaded] guilty to first degree murder." The trial court fulfilled its mandated mission to assure that Blair entered his plea with full knowledge and understanding of its consequences. We therefore affirm Judge Harding's conclusion that Blair's guilty plea was knowing and voluntary.

## II. PROSECUTORIAL ERROR

Blair claims that the prosecution failed to disclose the existence of the July 5 statement to the court and defense counsel and that failure to do so was prejudicial. The prosecution has a continuing duty to disclose interviews and other discovery material to the defense on request.[11] However, a breach of the discovery rules does not warrant reversal absent a showing of prejudice to the defendant.[12]

The record reveals that the prosecution did not completely fail to advise the defense that the interview took place. The bill of particulars, which the prosecution filed before the July 28 plea hearing, revealed that Blair told the prosecution that Eastwood shot the victim. Although it appears that an actual copy of the interview was not provided to Blair, defense counsel was advised that his client had given a different version of events to the prosecution. Also, Blair's counsel testified at the evidentiary hearing on the motion to withdraw the plea that he knew about Blair's second version before the July 25 plea hearing and that the July 5 statement contained no new information. Because defense counsel was advised that the statement was made and because the statement contained information of which Blair's counsel was already

10. Those opportunities included the July 25 plea hearing, the October 17 hearing to withdraw the plea, and the January 4, 1979, sentencing hearing.

11. Utah R.Crim.P. 16; *State v. Archuleta*, 850 P.2d 1232, 1242–43 (Utah), *cert. denied*, — U.S. —, 114 S.Ct. 476, 126 L.Ed.2d 427 (1993).

12. *Archuleta*, 850 P.2d at 1243 (reversal due to prosecutorial nondisclosure not warranted unless defendant's substantial rights are violated); *see also State v. Knight*, 734 P.2d 913, 918–19 (Utah 1987).

aware, we find no prejudice resulting from the prosecution's failure to provide a copy of the transcript of Blair's statement.

■ Blair also claims prejudice resulting from the prosecution's failure to advise the trial court at the plea hearing that Blair had recently given a statement contradicting his claim that he shot the victim. We note that neither Blair nor his counsel brought this matter to the trial court's attention and that their decision not to reveal the information appears to have been deliberate.

We think it odd that the contradictory statement was not revealed to the trial court at the plea hearing. However, we need not decide if the prosecutor erred by not doing so, because Blair was not prejudiced as a result. As discussed previously, when the trial court was advised of the second version of events, it held a special hearing for the sole purpose of permitting Blair to withdraw his guilty plea if he desired. Thus, any prejudice that Blair could possibly have suffered from the trial court's acceptance of his guilty plea before it was apprised of Blair's claim of "innocence" was alleviated by the subsequent hearing. We find that Blair's substantial rights were not affected by nondisclosure and therefore affirm Judge Harding's ruling that Blair was not prejudiced by the prosecution's failure to reveal the contents of the July 5 statement.

### III. EFFECTIVE ASSISTANCE OF COUNSEL

■ Blair claims that his attorney was ineffective because he did not have an accurate understanding of accomplice liability and that he incorrectly advised Blair as to Blair's liability under Utah's accomplice statute. That incorrect advice, Blair alleges, caused him to plead guilty to a crime for which he was not responsible. Judge Harding specifically found that Blair "was adequately represented at all stages of the proceedings" and

was not denied effective assistance of counsel.

To demonstrate that counsel was ineffective, Blair must show that his counsel's performance was deficient and that the deficiency was prejudicial.[13] If either criterion is not met, the claim fails.[14] We do not find any deficiency in counsel's performance in this case. According to the record evidence, counsel understood the basis for liability under Utah's accomplice statute and on several occasions adequately advised Blair of the possibility that based on the evidence, a jury could infer the culpable mental state necessary to convict him under an accomplice theory. Blair opted to avoid the risk of being found guilty by a jury and receiving the death penalty by pleading guilty. Blair has not shown that his counsel's representation " 'fell below an objective standard of reasonableness.' "[15] We therefore affirm Judge Harding's conclusion that Blair's counsel was not ineffective.

As a final argument, Blair claims that Judge Harding erred by determining that his motion was also barred by the principle of laches. Because we find that Blair entered his plea knowingly and voluntarily and that he was not denied effective assistance of counsel, we need not accept the State's invitation to apply the doctrine of laches to the facts in this case. We have reviewed the other claims raised on appeal and find them to be without merit.

Affirmed.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

13. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *State v. Tyler,* 850 P.2d 1250, 1253–54 (Utah 1993); *State v. Templin,* 805 P.2d 182, 186 (Utah 1990).

14. *See Templin,* 805 P.2d at 186 (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064).

15. *Id.* (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065).