STATE of Utah, Plaintiff and Appellee,

v.

Roger Eugene PENMAN, Defendant and Appellant.

No. 960639–CA.

Court of Appeals of Utah.

June 25, 1998.

Reed L. Martineau, Korey D. Rasmussen, Snow, Christensen & Martineau, Salt Lake City, for Defendant and Appellant.

Jan Graham, Atty. Gen., and Kenneth A. Bronston, Asst. Atty. Gen., Criminal Appeals Div., Salt Lake City, for Plaintiff and Appellee.

Before WILKINS, JACKSON and ORME, JJ.

## OPINION

ORME, Judge:

Roger Eugene Penman appeals the denial of his motion to withdraw his no-contest plea to one count of manslaughter, a second degree felony in violation of Utah Code Ann. § 76–5–205 (1995),[1] and his guilty plea to robbery, a second degree felony in violation of Utah Code Ann. § 76–6–301 (1978).[2] We affirm, concluding that the requirements of Rule 11(e) of the Utah Rules of Criminal Procedure were satisfied and, therefore, that the trial court properly denied Penman's motion to withdraw his pleas. We further conclude that the record before us is inadequate to determine whether Penman received ineffective assistance of counsel; that two of three pieces of allegedly exculpatory evidence are not properly before us and that the third, a ballistics report, was not improperly withheld; and that Penman waived his rights under the Interstate Agreement on Detainers (IAD), as codified in Utah Code Ann. § 77–29–5 (1995), when he voluntarily and unconditionally entered his pleas.

## FACTS

On October 31, 1987, or the early morning hours of the following day, Spencer Nielsen was killed in his Midvale home by a blast from a twenty-gauge shotgun, and oriental artifacts were taken from his home. Several weeks later, a high speed chase occurred between the towns of Rawlins and Green River, Wyoming, ending in the apprehension of appellant Penman and Monte "Bo" Johnston. A third person, Wendell Devon Baer, eluded the police and was later apprehended in Craig, Colorado, but he made bail and has not been seen since. The Wyoming authorities recovered artifacts from the vehicle that were identical to those taken from Nielsen's home. The authorities also recovered twenty-gauge shotgun shells from the vehicle and Penman's pockets.

1. As a convenience to the reader, and because the provisions in effect at the relevant times do not differ materially from the statutory provisions currently in effect, we cite to the most recent statutory codifications throughout this opinion, unless otherwise noted.

2. Section 76–6–301 was subsequently amended.

After his Wyoming arrest, Penman was transferred to Nevada to face probation-violation charges. Meanwhile, in exchange for immunity, Johnston provided Salt Lake County authorities with information on two homicides—one of which was the Nielsen homicide. Johnston informed the authorities that he, Penman, Baer, and Rick Lewis went to the Nielsen residence where they stole oriental artifacts. Johnston also stated that before leaving, he and Penman reentered the home, where Penman shot Nielsen with the twenty-gauge shotgun.

Salt Lake County authorities filed theft, burglary, robbery, and second-degree murder charges against Penman, Baer, and Lewis. While incarcerated in Nevada, Penman filed for a 180–day disposition of detainers under the IAD and was returned to Utah on April 4, 1988. Penman subsequently waived his rights under the IAD. Lewis was later arrested and agreed to cooperate with Salt Lake County authorities in exchange for reduced charges. His account substantially supported Johnston's, except regarding who actually pulled the trigger.

Shortly before Penman's preliminary hearing, Johnston, who was then on probation in Wyoming, fled and remains at large. Lewis therefore became the State's key witness. On October 28, 1988, following a preliminary hearing at which Lewis testified, Penman entered a no-contest plea to manslaughter and a guilty plea to robbery. Penman received a lengthy prison sentence, which he continues to serve.

## PROCEDURAL HISTORY

In June 1990, Penman filed a pro se Motion for Appointment of Counsel, Motion to Withdraw Pleas, and a Motion in Forma Pauperis. Penman's Motion for Appointment of Counsel was granted on July 9, 1990. After several delays in getting counsel appointed, in March 1992 Penman's newly appointed attorney filed a memorandum supporting Penman's motion to withdraw his pleas, arguing that the trial court failed to comply with Rule 11 of the Utah Rules of Criminal Procedure in accepting Penman's guilty and no-contest pleas. Specifically, Penman argued that the plea colloquy and affidavits were inadequate and that he did not enter the pleas voluntarily. Penman contended that he entered the pleas based upon the belief that both Johnston and Lewis would be testifying against him. He also asserted that Lewis gave perjured testimony at the preliminary hearing. Penman's motion to withdraw his pleas was denied on August 14, 1992. His attorney withdrew during the ensuing thirty-day appeal period without first filing a notice of appeal.

Penman's next move was to file a pro se Petition for Writ of Habeas Corpus on April 29, 1994. In his petition, Penman made a number of arguments, including those raised in his motion to withdraw his pleas, but also alleged ineffective assistance of counsel, violation of the IAD, and prosecutorial misconduct. On June 15, 1995, the trial court granted summary judgment to the State, concluding that the claims Penman raised in his petition were procedurally barred due to his failure to directly appeal the denial of his motion to withdraw his pleas, that his pleas were knowing and voluntary, and that he was not prejudiced by his counsel's withdrawal during the thirty-day appeal period following the denial of his motion to withdraw pleas. Penman appealed to this court, and in an unpublished memorandum decision,[3] we reversed and remanded the case to the trial court for reentry of the order denying Penman's motion to withdraw his pleas, thereby enabling him to pursue belatedly the first appeal as of right which he had been theretofore denied. The trial court reentered the order "tunc pro nunc"[4] on August 27, 1996.

---

3. Because the memorandum decision established "law of the case" which plays a central role in our analysis, the decision is set forth for that limited purpose in the Appendix to this opinion. See Utah Code Jud. Admin. R4–508(1), (3), – 605.

4. "Nunc pro tunc, which means 'now for then,' is probably a misnomer for this circumstance, where the court is resentencing to give the judgment of conviction not retroactive but present effect—'then for now.' Perhaps the action being authorized here should be termed tunc pro nunc." State v. Johnson, 635 P.2d 36, 38 n. 1 (Utah 1981).

Penman now appeals from that order.[5]

## ISSUES

Penman raises several arguments in this appeal. First, he argues that the trial court failed to comply with Rule 11 of the Utah Rules of Criminal Procedure in taking his guilty and no-contest pleas, and, therefore, good cause· exists for the withdrawal of his pleas. Second, Penman contends that he was denied effective assistance of counsel in entering his guilty and no-contest pleas. Third, Penman claims that he would not have entered his pleas had he known of certain exculpatory and impeachment evidence which he obtained in 1994. Fourth, Penman argues that the State of Utah lost jurisdiction over him because his waiver of rights under the IAD was not made knowingly, intelligently, and voluntarily.

## ALLEGED RULE 11 VIOLATION

■ Penman first contends that he did not understand the nature and elements of manslaughter and robbery when he entered his pleas and that the plea affidavits and colloquy fail to demonstrate Rule 11 compliance. He therefore argues that the trial court erred in denying his motion to withdraw his pleas.

"A plea of guilty or no contest may be withdrawn only upon good cause shown and with leave of the court." Utah Code Ann. § 77–13–6(2)(a) (1995). "We review a trial court's denial of a motion to withdraw a guilty plea under an abuse-of-discretion standard." *State v. Blair*, 868 P.2d 802, 805 (Utah 1993). Consequently, "[t]he trial court's findings of fact made in conjunction with its decision will not be set aside unless they are clearly erroneous." *Id.*

■ The version of Rule 11 in effect when Penman entered his plea provided, in pertinent part, that

.[t]he court ... shall not accept ... a [guilty or no contest] plea until the court has made the findings:

. . .

(2) That the plea is voluntarily made;

(3) That the defendant knows he has rights against compulsory self-incrimination, to a jury trial and to confront and cross-examine in open court the witnesses against him, and that by entering the plea he waives all of those rights;

(4) That the defendant understands the nature and elements of the offense to which he is entering the plea; that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt; and that the plea is an admission of all those elements....

Utah R.Crim. P. 11(e)(2)-(4) (1988).[6] The trial judge bears the burden of establishing, on the record, strict compliance with Rule 11(e). *See State v. Abeyta*, 852 P.2d 993, 995 (Utah 1993) (per curiam); *State v. Gibbons*, 740 P.2d 1309, 1313 (Utah 1987). However, "strict compliance can be accomplished by multiple means so long as no requirement of the rule is omitted and so long as the record reflects that the requirement has been fulfilled." *State v. Maguire*, 830 P.2d 216, 218 (Utah 1991).

We conclude that the trial court complied with Rule 11(e) and therefore did not abuse its discretion in denying Penman's motion to withdraw his pleas.

[The] record may reflect [Rule 11 compliance] by multiple means, e.g., transcript of the oral colloquy between the court and defendant, contents of a written affidavit that the record reflects was read, understood, and acknowledged by defendant and the court, contents of other documents such as the information, presentence reports, exhibits, etc., similarly incorporated into the record, and so on.

*Id.* In open court and in accordance with Rule 11(e)'s requirements, Penman executed two affidavits, one for each charge, wherein he stated that his pleas were voluntarily made, that he knew he had rights against compulsory self-incrimination and to a jury trial, that he understood the prosecutor must prove every element of the charged crimes

---

5. We acknowledge the assistance of Penman's counsel, who represented Penman in these proceedings pro bono.

6. Rule 11 has since been amended.

beyond a reasonable doubt if Penman proceeded to trial, and that his pleas waived the constitutional rights discussed in the affidavits.

With regard to the elements of the crimes, the affidavits stated that Penman had received a copy of the information, which set forth the robbery charge and further recited that Penman was charged with "criminal homicide, murder in the second degree, [for] intentionally or knowingly caus[ing] the death of Spencer Nielson." The information also contained a probable cause statement describing the facts supporting the charges, including the allegation that "defendant Penman shot Nielson at close range with a 20 g[au]ge sawed-off shotgun." *Cf. Jolivet v. Cook,* 784 P.2d 1148, 1150 (Utah 1989) (looking to information to support conclusion that plea was knowingly and voluntarily made), *cert. denied,* 493 U.S. 1033, 110 S.Ct. 751, 107 L.Ed.2d 767 (1990).

The criminal homicide affidavit also stated the elements of manslaughter were "[t]hat the defend[a]nt as a party to the offense recklessly caused the death of another." The affidavit pertaining to the robbery charge similarly stated the elements of that offense. Both affidavits recited: "I have read this Affidavit, or I have had it read to me by my attorney and I know and understand its contents." Penman signed the affidavits beneath statements that he could read and understand the English language and that he had earned his GED and completed one year of college. Both of his attorneys signed the affidavits, as did the trial judge and prosecutor. Thus, the affidavits Penman executed in court complied with Rule 11(e). *See Gibbons,* 740 P.2d at 1313–14 (listing requirements of sufficient plea affidavit).

In addition to the in-court affidavits, the trial court engaged Penman in a meaningful plea colloquy. In the colloquy, the trial judge verified that Penman could read, write, and understand English; that he was not under the influence of drugs or alcohol; that he was not mentally ill; that he understood that by entering pleas to criminal manslaughter and robbery he would be giving up certain constitutional rights; that he understood the penalty for a second degree felony; and that he was satisfied with his attorney's advice.

Despite the foregoing, Penman contends that the trial court did not strictly satisfy Rule 11 because it failed to engage him in a colloquy about each element of criminal manslaughter and robbery. Of course, such a discussion is not necessarily required. While Rule 11 must be strictly satisfied, the trial court need not "perform a verbatim recitation of each and every statement made in the defendant's affidavit." *State v. Trujillo-Martinez,* 814 P.2d 596, 599 (Utah Ct.App. 1991), *cert. denied,* 843 P.2d 516 (Utah 1992).

In *Trujillo-Martinez,* the defendant similarly argued that Rule 11 had not been satisfied because the trial court failed to specifically inquire into the defendant's understanding of the nature and elements of the charged crime. *See id.* We held that the trial court satisfied Rule 11 because the defendant's affidavit "strictly complied with Rule 11, and the colloquy establishe[d] that [the defendant] knowingly and voluntarily signed the affidavit." *Id.* at 600. Here, as in *Trujillo-Martinez,* the affidavit fully complied with Rule 11 and the trial court established that Penman signed the affidavits knowingly and voluntarily in open court. We therefore hold that the requirements of Rule 11 were satisfied and that the trial court did not abuse its discretion by denying Penman's motion to withdraw his pleas.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Penman also contends that he was denied his constitutional right to the effective assistance of counsel. Specifically, he alleges that his original attorney "fraudulently" stipulated that Monte "Bo" Johnston had been served with a subpoena, failed to inform the trial court that Johnston had not been subpoenaed, and failed to take appropriate action in light of the lack of subpoena. Additionally, Penman alleges that his attorney knew or should have known that Rick Lewis gave perjured testimony regarding an immunity agreement and that his attorney failed to take appropriate action.

We are unable to address the merits of Penman's ineffective assistance claims. In our previous decision in this case, we ordered as follows: "[W]e reverse and remand this case to the trial court for reentry of the order denying Penman's motion to withdraw guilty pleas, so that he will be able to pursue a first appeal as of right from that order." Appendix at A–2. Thus, the instant appeal is necessarily limited to the trial court's denial of Penman's motion to withdraw his pleas. In his original motion to withdraw, Penman touched upon what he perceived to be some of trial counsel's shortcomings, but he failed to specifically raise an ineffective assistance claim. This is therefore a new argument raised for the first time on appeal.

 "[P]roof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993). When a defendant raises an ineffective assistance claim for the first time on appeal, the claim will be reviewed only "if the ... record is adequate to permit decision of the issue." *State v. Humphries*, 818 P.2d 1027, 1029 (Utah 1991). The record is not adequate in this case.

 First, regarding to trial counsel's acts or omissions surrounding the Johnston subpoena, there is inadequate evidence in the record pertaining to counsel's actions and/or knowledge and insufficient evidence relating to whether Johnston was in fact served. Therefore, we have no ability to address this claim.

 Second, regarding Lewis's allegedly perjured testimony, there is also insufficient evidence in the record for us to determine this issue. Penman contends that his counsel failed to take any action after Lewis twice mentioned a "deal" with prosecutors—once at the preliminary hearing and again in a sworn statement to the prosecutor. However, defendant failed to include, as part of the record on appeal, a sufficient transcript of the preliminary hearing. The record does contain, as an exhibit to defendant's memorandum in support of his motion to withdraw his pleas, two photocopied pages purportedly from the preliminary hearing transcript.

However, two isolated pages of transcript is inadequate, most importantly because it does not permit us to place the testimony in any context whatsoever. Penman contends that he should not be held responsible for the absence of a complete transcript, claiming the parties agreed that the entire record in the case would be made part of the appellate record and that it was his understanding that the trial court clerk would provide those records in their entirety.

 Despite Penman's contentions, he is ultimately responsible for ensuring that we receive all portions of the record necessary to his arguments on appeal. "When a defendant predicates error to [an appellate court], he has the duty and responsibility of supporting such allegation by an adequate record." *State v. Wulffenstein*, 657 P.2d 289, 293 (Utah 1982), *cert. denied*, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983). *Accord Turner v. Nelson*, 872 P.2d 1021, 1024 (Utah 1994); *Call v. City of West Jordan*, 788 P.2d 1049, 1052 (Utah Ct.App.) ("[T]he appellant has the burden of providing the reviewing court with an adequate record on appeal to prove his allegations."), *cert. denied*, 800 P.2d 1105 (Utah 1990). "Absent that record, defendant's assignment of error stands as a unilateral allegation which the review[ing] court has no power to determine. [An appellate court] simply cannot rule on a question which depends for its existence upon alleged facts unsupported by the record." *Wulffenstein*, 657 P.2d at 293. Consequently, in the face of "an [in]adequate record on appeal, [we] must assume the regularity of the proceedings below." *State v. Miller*, 718 P.2d 403, 405 (Utah 1986) (per curiam). *See State v. Blubaugh*, 904 P.2d 688, 699 (Utah Ct.App. 1995) (assuming regularity of proceedings below because appellant failed to include transcript), *cert. denied*, 913 P.2d 749 (Utah 1996).

Given our obligation to assume the regularity of the preliminary hearing, the transcript of Lewis's sworn statement given to prosecutors is the only remaining document in the record we could consider in addressing Penman's ineffective assistance claim. Standing alone, it is inadequate to establish ineffective assistance. However, in ruling

that the record on appeal is presently inadequate for us to address these claims, we do not foreclose the possibility that they could be pursued by other more appropriate means, for instance through a habeas corpus petition.

## EXCULPATORY EVIDENCE

Penman next argues that after filing his initial motion to withdraw his pleas, he uncovered exculpatory evidence that should have been provided to him. He contends that, had he been aware of this evidence, he would not have entered his pleas. Penman points to three alleged items of exculpatory evidence: an F.B.I. ballistics report; a Salt Lake County Sheriff's report, purportedly establishing that Rick Lewis entered into an immunity agreement with prosecutors; and documents allegedly showing that a subpoena was never served on the State's key witness, Monte "Bo" Johnston.

As previously indicated, this appeal is from the denial of Penman's motion to withdraw his pleas. All three pieces of allegedly exculpatory evidence fall outside the scope of Penman's motion to withdraw his pleas and are therefore not properly before us in an appeal from the denial of that motion. *Cf. Chapman v. Chapman*, 728 P.2d 121, 123 (Utah 1986) (per curiam) (stating that appellate court cannot consider matters outside the record); *In re Estate of Cluff*, 587 P.2d 128, 129 n. 1 (Utah 1978) (same).

■ Concerning Penman's exculpatory evidence claims relating to the Johnston subpoena and Lewis's alleged deal with prosecutors, we note that Penman raised these arguments in conjunction with his initial petition for writ of habeas corpus. It was the appeal from the denial of this petition that resulted in our remand to the trial court, instructing it to reenter the order denying Penman's motion to withdraw his pleas, thereby enabling Penman to undertake this direct appeal. The trial court, in denying the habeas petition, failed to address the exculpatory evidence claims relating to Johnston and Lewis. Thus, while these claims are not properly before us on direct appeal and we therefore decline to address them, Penman is not foreclosed from raising

them in a future habeas corpus petition. *See infra* note 8.

■ Penman's final piece of allegedly exculpatory evidence is an FBI ballistics report. Penman identified this report in the proceedings on his initial habeas corpus petition, and the trial court addressed it in its Findings of Fact, Conclusions of Law and Order. While the ballistics report is also not properly within the scope of this direct appeal from the denial of Penman's motion to withdraw his pleas, given the likelihood that the issue will recur, we nonetheless address it in the interest of judicial economy. *See, e.g., Vitale v. Belmont Springs*, 916 P.2d 359, 363 (Utah Ct.App.1996) (addressing issue in interest of judicial economy, even though case decided on other grounds). *Cf. State v. James*, 819 P.2d 781, 795 (Utah 1991) ("Issues that are fully briefed on appeal and are likely to be presented on remand should be addressed by [an appellate] court."); *State v. Bell*, 770 P.2d 100, 108 (Utah 1988) (addressing issue in interest of judicial economy, since issue likely to recur, to provide trial court with guidance); *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 231 (Utah 1987) (same). We hold that regardless of the ballistics report's exculpatory or inculpatory nature, it was not improperly withheld by the prosecution because Penman and/or his attorney knew or should have known of it.

In its decision on Penman's habeas corpus petition, the trial court addressed this aspect of his claim, specifically finding it was "not persuaded that [Penman] was unaware of the ballistics report." This finding is amply supported by the State's Preliminary Response to Request for Discovery, which refers to correspondence between an investigating detective and the F.B.I. concerning evidence in the case. The State asserts that this evidence shows Penman and/or his counsel knew or had reason to know of the F.B.I. ballistics report. Penman fails to refute this contention or otherwise address it in his reply brief. Given the trial court's finding, the evidence apparently supporting it, and Penman's lack of explanation or argument concerning it, we must conclude that he or his counsel knew or should have known that the

ballistics test had been conducted and a report prepared. "[E]vidence is not improperly withheld if the defense has knowledge of that evidence and defense counsel simply fails to request it." *State v. Jarrell,* 608 P.2d 218, 225 (Utah 1980).

## INTERSTATE AGREEMENT ON DETAINERS

 Penman's final argument on appeal is that under the IAD, the State lost jurisdiction over him because he did not waive his IAD rights knowingly, intelligently, and voluntarily. More specifically, Penman alleges that he did not waive his IAD rights knowingly, intelligently, and voluntarily because of a series of errors prior to his waiver. Penman contends that he was not properly bound over on the homicide charge and was deprived of his right to a meaningful preliminary hearing on the charges against him because the prosecutor failed to disclose the grant of immunity to Lewis, suborned perjury from Lewis concerning the existence of a deal between Lewis and·prosecutors, allowed Lewis's testimony regarding the lack of a "deal" to stand uncorrected, and misrepresented that Johnston had been subpoenaed to appear in court.

 The State correctly asserts that Penman's IAD argument is not properly within the scope of this appeal. As previously explained, this appeal is limited to the denial of defendant's motion to withdraw his pleas. Penman's IAD argument was never raised in conjunction with the motion to withdraw, and it is therefore not properly before us.[7] However, given the likelihood that this issue will resurface in a future habeas proceeding, we nonetheless address it now in the interest of judicial economy. *See State v. James,* 819 P.2d 781, 795 (Utah 1991); *State v. Bell,* 770 P.2d 100, 108 (Utah 1988); *Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 231 (Utah 1987).

 We held above that Penman's unconditional pleas were consistent with Rule 11 and, therefore, that the trial court did not abuse its discretion in denying Penman's motion to withdraw his pleas. "A voluntary [and unconditional] plea of guilty or no contest constitutes a waiver of the right to appeal all nonjurisdictional issues...." *State v. Smith,* 833 P.2d 371, 372 (Utah Ct.App. 1992). *Accord State v. Brocksmith,* 888 P.2d 703, 705 (Utah Ct.App.1994). Contrary to Penman's position, "the 'rights created by the IAD[] are statutory, not fundamental, constitutional, or jurisdictional in nature.'" *Brocksmith,* 888 P.2d at 705 (alteration in original) (quoting *Greathouse v. United States,* 655 F.2d 1032, 1034 (10th Cir.1981) (per curiam), *cert. denied,* 455 U.S. 926, 102 S.Ct. 1289, 71 L.Ed.2d 469 (1982)). We therefore conclude that Penman conclusively waived his statutory IAD rights when he entered his voluntary and unconditional pleas to criminal manslaughter and robbery.

## CONCLUSION

First, we conclude that Rule 11 was satisfied and, therefore, that the trial court properly denied Penman's motion to withdraw his pleas. Second, we hold that the record is inadequate for us to decide on direct appeal Penman's claims of ineffective assistance of counsel. Third, regarding the three pieces of allegedly exculpatory evidence which Penman contends were improperly withheld, we conclude that the evidence relating to the Johnston subpoena and to Lewis's alleged deal with prosecutors is not properly before us. We hold that the trial court's finding that the ballistics report was not improperly withheld is not clearly erroneous because of evidence in the record showing Penman and/or his attorney knew or should have known of it. Fourth, we conclude that Penman waived his rights under the IAD by voluntarily and unconditionally pleading no

---

7. Even if Penman's IAD argument were within the scope of this appeal, his failure to provide a sufficient transcript of the preliminary hearing would prevent us from addressing the alleged errors in that proceeding and any bearing they had on his decision to waive his IAD rights. Due

to defendant's failure to provide an adequate record, we would be obligated to assume the regularity of that hearing. *See Miller,* 718 P.2d at 405; *Wulffenstein,* 657 P.2d at 293; *Blubaugh,* 904 P.2d at 699.

contest to manslaughter and guilty to robbery.[8]

Affirmed.

WILKINS, Associate P.J., and JACKSON, J., concur.

*APPENDIX*

*TO OPINION IN CASE NO. 960639–CA*

IN THE UTAH COURT OF APPEALS

Roger Eugene Penman,

Petitioner and Appellant,

v.

Scott Carver, et al.,

Respondent and Appellee.

Case No. 950484–CA

FILED (April 25, 1996)

Third District, Salt Lake County The Honorable William B. Bohling

Attorneys: Reed L. Martineau and Korey D. Rasmussen, Salt Lake City, for Appellant. Jan Graham and Angela Micklos, Salt Lake City, for Appellee

MEMORANDUM DECISION

Before Judges Orme, Greenwood, and Wilkins.

MEMORANDUM DECISION

GREENWOOD, Judge:

Roger Penman appeals the trial court's summary judgment dismissal of his petition for a writ of habeas corpus. Penman claims that the trial court erred in determining that: (1) Penman's failure to directly appeal the denial of his motion to withdraw guilty pleas procedurally barred him from receiving collateral review; and (2) the withdrawal of court-appointed counsel during the thirty-day appeal period did not prejudice or deny Penman his right to a first appeal. We reverse and remand for reentry of the order denying Penman's motion to withdraw his guilty plea.

In reviewing an appeal from a dismissal of a petition for a writ of habeas corpus, "no deference is accorded the lower court's conclusions of law that underlie the dismissal of the petition. We review those for correctness." *Fernandez v. Cook,* 783 P.2d 547, 549 (Utah 1989).

Penman claims that the improper withdrawal of his court-appointed counsel during the appeal period is an unusual circumstance which entitles him to the writ and justifies his failure to directly appeal the denial of his motion to withdraw his guilty pleas.[1]

We believe the Utah Supreme Court's opinion in *State v. Gordon,* [913 P.2d 350] (Utah 1996) is controlling. In *Gordon,* the defendant claimed his attorney had caused him to be denied his constitutional right to an appeal. On appeal from the trial court's denial of the defendant's petition for a writ for postconviction relief, the supreme court

---

8. Those matters that were not properly before us, and which we were therefore unable to address, may best be dealt with in a habeas corpus proceeding where evidence can be taken. As the Utah Supreme Court has explained:

> Numerous cases have arisen that have called in question the fundamental justice of a conviction where the issue was not, or could not be, dealt with on direct appeal. Prime examples involve cases in which issues arise outside the record, e.g., the subsequent discovery of the suppression of exculpatory evidence, the ineffective assistance of counsel, especially in the investigation and preparation of a case, the discovery of new exculpatory evidence, and fraud committed on the court by the knowing use of false evidence.

*Hurst v. Cook,* 777 P.2d 1029, 1036 n. 6 (Utah 1989) (citations omitted). However, we in no

way comment on whether such a petition would be well taken. *See generally id.* at 1036–37 & nn. 6–8. We do note that, aside from those claims which we have treated on the merits, the usual concern about successive habeas petitions should not bar Penman from pursuing such a petition. This is because his previous habeas corpus petition was effectively derailed by our prior decision putting him on a more orderly "direct appeal" track. We did this rather than entertain the appeal from the denial of his habeas petition, which we essentially regarded as premature. *See* Appendix.

1. Penman raises several other issues on which the trial court ruled against him. Because of our disposition we do not reach those issues.

issued an order remanding to the trial court for resentencing in order to allow for a first appeal as of right. *Id.* at [352]. The supreme court did not engage in a plenary review of defendant's claims of ineffective counsel or whether the denial of the "constitutional right to an appeal" was wrongful. Instead, it merely remanded in order to facilitate an opportunity for a first appeal as of right. *Id.* The supreme court also repeated its admonition in an earlier case, as follows:

> Once [an appellate] court on habeas review determines that a defendant has been denied the constitutional right to appeal, a direct appeal should be provided immediately, *without adjudication of any other claims,* such as ineffective assistance of counsel.

*Id.* at [357] (emphasis added) (quoting *State v. Hallett,* 856 P.2d 1060, 1062 (Utah 1993)).

Therefore, once a court determines that a defendant has been denied the constitutional right to appeal, the case should be remanded "to the trial court for resentencing, so that [the defendant] may raise the issues ... presented in a first appeal as of right." *Id.* at [353].

Penman's claim is largely identical to the defendant's in *Gordon.* Both claimed that because of their legal counsel, they were prevented from pursuing a first appeal as of right. Accordingly, following the opinions in *Gordon* and *Hallett,* we reverse and remand this case to the trial court for reentry of the order denying Penman's motion to withdraw guilty pleas, so that he will be able to pursue a first appeal as of right from that order. We note that this differs slightly from *Gordon,* in that Penman seeks to appeal from the order denying his motion to withdraw guilty pleas, rather than from an adjudication of guilt and sentencing, as was the case in *Gordon.* It is therefore appropriate to remand for reentry of the order denying the motion in this case.

/S/
Pamela T. Greenwood, Judge

I CONCUR:

/S/
Gregory K. Orme,
Presiding Judge

WILKINS, Judge (concurring):

I concur in the reasoning and result expressed in the main opinion. However, while I agree that the plain meaning of *State v. Gordon,* [913 P.2d 350] (Utah 1996) appears to require remand in this case, I fear that both *Gordon* and our opinion here may be misunderstood.

As I read *Gordon,* it stands for the proposition that once the court has reviewed the case sufficiently to determine that the petitioner has been *denied* the right of appeal, no *further* review is necessary. I do not read *Gordon* as saying that any failure to file an appeal mandates a nunc pro tunc resentencing to allow the opportunity to file an otherwise untimely appeal.

Unfortunately, only a very careful reading of *Gordon* and our decision here will reveal the consistent use of the word "denied" in relation to the preliminary determination of how it came to be that Gordon, and Penman, ended up without a timely appeal in the first place. I understand the word to be used in the sense that Gordon, and Penman, have been prevented in some meaningful way from proceeding with their appeals. Had we concluded that Penman simply waived his right to appeal by his own knowing inaction, he would not have been *denied* the opportunity to appeal, and remand would be inappropriate.

/S/
Michael J. Wilkins, Judge